36 So.2d 343

**BIRMINGHAM ELECTRIC CO. v. FARMER et al.**

6 Div. 632, 720.

Supreme Court of Alabama.

June 30, 1948.

Rehearing Denied July 31, 1948.

Lange, Simpson, Robinson & Somerville, of Birmingham, for appellant.

Chas. W. Greer and Geo. Rogers, both of Birmingham, for appellees.

STAKELY, Justice.

Mrs. Lucille Farmer (appellee) recovered a verdict and judgment against the Birmingham Electric Company (appellant) in the amount of $5000.00. Oscar W. Farmer (appellee), husband of Mrs. Lucille Farmer, also recovered a verdict and judgment against The Birmingham Electric Company in the sum of $700.00. The cases were tried together in the Circuit Court of Jefferson County. Following the overruling of a separate motion for a new trial in each case, separate appeals were taken to this court. By agreement of the parties sanctioned by this court the two cases on appeal have been submitted on one record. The suit by the wife is to recover damages allegedly sustained by her through the negligence of the defendant. The suit by the husband is for expenses incurred and loss of service and companionship arising out of the same occurrence.

On February 28, 1945, Mrs. Lucille Farmer with her son four years old boarded a street car of the defendant at Rugby Avenue and 80th Street in the City of Birmingham. After the car stopped at 82nd Street the operator (it was a one-man car) alighted from the car and took his handles or controls with him. He went to and entered a house on Seventh Avenue. The street car then started moving, increasing its speed as it went toward a curve two blocks away. It turned the curve and passed Seventh, Sixth, Fifth, Fourth, Third, Division and Underwood Avenues before reaching First Avenue. Mrs. Far-

mer went to the back end of the street car and sat down on the step on the back platform with her little boy between her knees. She put her coat around him for protection. The track on which the street car was travelling ended about fifty feet before reaching First Avenue. As the street car rolled off the track its wheels caught in another street car track which ran into First Avenue, with the result that the street car curved to the left and travelled about 200 feet over the pavement to the west. As it made the turn it practically demolished an automobile parked on the north side of First Avenue. Tendencies of the evidence showed that the street car at the time was moving at about 25 miles per hour. As the street car lunged around the curve, a Negro woman who was standing to the rear of Mrs. Farmer fell over her and the child. According to her testimony Mrs. Farmer remembered nothing from the time the woman fell over her until she came to lying on the floor. She was still dazed when she was given some coffee. The boy was not hurt at all. She was carried to St. Vincent's Hospital in an ambulance. She stayed there about two hours and was then taken home by her husband. That night she began suffering with a backache. Two days later she went to a doctor.

Reversal is sought on assignments of error predicated on rulings on the evidence, the action of the court on a written charge requested by the defendant and the action of the court in overruling a motion for a new trial based on excessiveness of the verdict.

Assignment of error 4. It is claimed that the court was in error in overruling the defendant's objection to the following question propounded by the plaintiff to the witness Dr. T. L. Smith, who had qualified as an expert.

"Q. Now, Doctor, if you assume prior to 1945,—February the 28th, 1945, she was a woman weighing 150 to 170 pounds, and that she had not before that time suffered from pain, except such discomfort that comes with her periods, in her back and the kidneys and stomach, and further assuming she was a passenger in a street car and that the street car ran off the track and struck a car, and the street car curved or gave a lunge to the left after colliding with an automobile, and at the time the car swerved to the left, it jerked her while she was seated on the step of the street car, and further assuming that before the car came to a standstill, a negro woman who was standing by her, fell over against her, and assuming that on the 2nd of March you found the bruises and contusions that you found on her, and assuming that she gave the complaints she gave you from 1945 until July, 1946, and further assuming that you examined her and gave her the treatment that you said you gave her during that time; and further assuming that in July, 1946, an X-ray showed one of Mrs. Farmer's kidneys dropped approximately two inches when she stood erect, and the other kidney dropped approximately one inch when she stood erect; and further assuming since the experience in the street car,—since she had the experience in the street car, she suffered frequently with pain in her kidneys and back, and she suffered with pain when voiding her bladder, wherever the pain came from, would you say, in your opinion, that the floating kidneys were probably due to traumatic injury that you found on her when you first examined her?"

According to appellant the error lies (1) in the assumption that Mrs. Farmer had floating kidneys when no evidence had been introduced to that effect and (2) the question seeks to elicit evidence which would invade the province of the jury. It seems to us that the question and objection can be better understood if we give a brief recital of certain tendencies of the evidence and show the circumstances under which the question was asked.

When Mrs. Farmer went to the office of Dr. Smith after the accident on March 2, 1945, she had "multiple bruises, contusions and blue spots or eccymosis over the left arm and back and left side and the lower part of the chest. Eccymosis is bleeding under the skin and is caused by trauma." She appeared highly nervous. She returned to see Dr. Smith on March 9, 13, 16, 20, 26 and 30th. The doctor advised her to stay in bed for some time and not to be on her feet any more than she

could help. On March 20th the doctor made the following notation on his record of Mrs. Farmer's treatment: "Pain left kidney region, will x-ray for ptosis left kidney." In the meantime she had visited several other doctors. She came back to see Dr. Smith in 1946. She visited him on five occasions in May of that year and three in June. She was complaining of pain in her right kidney region, pain across the small of her back, left shoulder and left side of the head. The doctor gave her ten shots of penicillin during these 1946 visits. The doctor saw her on June 7, 8, 10 of 1946 and gave her more penicillin. At that time she was complaining of pain in both sides of her back. On June 7 she was suffering with some fever. Mrs. Farmer came back on July 11, 12 and 13 complaining with pain over her left kidney and the left lower quadrant of the abdomen. This time the doctor gave her five hundred thousand units of penicillin. That was the last treatment of the plaintiff by Dr. Smith.

At about this time Dr. Smith sent Mrs. Farmer to Doctors Meadows and Kesmodel for what he termed an intravenous injection pyelograph, that is, an injection through the kidneys preparatory to make an x-ray of the kidneys. This was done in order to find out if there had been any dislocation of the kidneys. Dr. Kesmodel was an X-ray expert. He got a report from Dr. Kesmodel.

After the foregoing evidence had been introduced Dr. Smith gave the following answer to the following question:

"Q. What is a movable or a displaced kidney? A. Well the kidneys are placed between two layers of fascia resting on a pad of fat to keep them in position. They do not have anything except this pad of fat to hold them there, and the fascia, and they sometimes slip down between the layers of fat."

The doctor further testified that it was possible for the movable kidney to resume its normal position when the person afflicted laid down and that if when a person stood up the kidneys dropped down they were movable kidneys.

When the objection was made to the hypothetical question plaintiff's counsel admitted that it was hypothesized on the x-ray and asked the court to let it be excluded if the X-ray was not produced showing that was her condition. Subject to the question being thus connected, the court permitted the question to be answered. In due course the X-ray was introduced in evidence. There was testimony tending to show by the X-ray that the kidneys had dropped. This condition is known as ptosis of the kidneys. There is proof in the record that the terms floating kidney, movable kidney, displaced kidney and dropped kidney are synonomous and used interchangeably. We accordingly understand there was evidence in the record that tended to show that the kidneys of Mrs. Farmer had dropped and were floating kidneys. It seems to us that the evidence subsequently admitted removed the objection that there was no evidence of floating kidneys. Prudential Ins. Co. v. Calvin, 227 Ala. 146, 148 So. 837. Furthermore when the question was propounded to Dr. Smith, he considered that Mrs. Farmer had floating kidneys. Since this was within the knowledge of an expert, it was not necessary to hypothesize as true that she had floating kidneys. "Opinion evidence of experts, such as physicians, may be based upon facts of which the witness has actual knowledge, as well as upon abstract hypothesis." Louisville & N. R. R. Co. v. Stewart, 128 Ala. 313, 29 So. 562, 568. Since he was an expert, there was nothing in his testimony or the question put to him which invaded the province of the jury. Colvin v. State, 247 Ala. 55, 22 So.2d 548; Watson v. Hardaway–Covington Cotton Co., 223 Ala. 443, 137 So. 33.

Assignment of error No. 5. After Dr. Smith had been asked the question on which is based assignment of error no. 4, the doctor answered, "In my opinion, it would cause it." Counsel for plaintiff then said, "My question was would it probably cause it." Over the objection the witness then answered, "I believe it would." Thereupon plaintiff's counsel asked the following question, "That is your best judgment on it?" The witness answered "Yes sir." There was objection to both the question and answer and exceptions to the ruling of the court overruling the objections. The

witness then said "I didn't understand the question." The question was then read and the witness answered "That is my best judgment, yes."

This assignment of error is based on the ruling of the court allowing the foregoing question, "My question was would it probably cause it." Appellant makes the same argument to support this assignment as made to support assignment no. 4. What was said as to assignment of error no. 4 is sufficient here.

Assignments of error 8 and 9. These assignments are based respectively on the action of the court in overruling the motion for a new trial and in overruling the motion for a new trial on the ground of excessiveness of the verdict. The only insistence in argument is as to the excessiveness of the verdict in the case of Mrs. Farmer. All of the doctors testified that ptosis of the kidneys could result from trauma. Dr. Smith gave his opinion that the floating kidneys of Mrs. Farmer were the result of the accident in the case. Tendencies of the evidence showed that after a long period of suffering and treatment Mrs. Farmer was sent to the X-ray specialist. The X-ray showed that both kidneys had dropped. Tendencies of the evidence showed that the condition was permanent causing at times severe pain and other resulting troubles such as weariness and neurasthenia and there was no cure for Mrs. Farmer outside of a major operation.

■ The court heard the witnesses testify and upon due consideration overruled the motion for a new trial. We are not willing to say that the court should have granted the motion on the ground that the damages were excessive. Birmingham Electric Co. v. Latham, 249 Ala. 592, 32 So.2d 515.

■ Assignment of error No. 10. This written charge A–5 requested by the de-

fendant. The argument under this assignment is made with reference to the case of Mrs. Farmer. There was no error in this regard because there is no claim in the complaint for compensation for any future operation. Newton v. Altman, 227 Ala. 465, 150 So. 698; Sloss–Sheffield Steel & Iron Co. v. Thomas, 202 Ala. 231, 80 So. 69. But it is contended that despite the absence of such claim in the complaint, the charge should have been given because of certain tendencies of the evidence. Dr. Shropshire testified that only an operation either by way of anchoring the kidney or by way of removing it could be effective to remedy the condition of a fallen kidney. He testified that it was an expensive, disabling major operation. It seems to us that the charge should not have been given even in explanation of recoverable damages under this evidence. The jury had the right to take the possible consequences of the injury into consideration in determining the present value of the injury as distinguished from future damages. Armour & Co. v. Cartledge, 234 Ala. 644, 176 So. 334. We think that the charge from this standpoint was sufficiently misleading or confusing to warrant its refusal.

■ Assignment of error No. 11. This assignment involves a similar charge applicable to Mr. Farmer's case. What has been said with reference to Mrs. Farmer's case is applicable here. Besides as applied to his case, it is not clear from the charge whether it refers to damages to compensate him for suffering his wife might sustain from the operation or for such expenses as the operation might cause him to incur.

The judgment in each case is due to be affirmed.

Affirmed.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.