Rosamond Underwood Smith WILSON, Thomas W. Smith and Frank M. Stapleton, as Executors of the Estate of Cothran P. Smith, Deceased, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

Civ. A. No. 5699.

United States District Court
N. D. New York.

Sept. 18, 1957.

**342**

Costello, Cooney & Fearon, Syracuse, M. Harold Dwyer and James A. Martin, Syracuse, of counsel, for plaintiffs.

Theodore F. Bowes, U. S. Atty., Syracuse, Bernard Burdick, Asst. U. S. Atty., Syracuse, N. Y., Charles K. Rice, Asst. Atty. Gen., James P. Garland and Jerome Fink, Dept. of Justice, Washington, D. C., of counsel, for defendant.

FOLEY, District Judge.

This action to recover substantial moneys paid pursuant to an assessment of additional income tax claimed to be erroneous and illegal presents the nightmarish problem that arises from the terms and court interpretations of such terms of Section 115(g), Internal Revenue Code of 1939, 26 U.S.C.A. § 115(g). The case came on for trial before this court and a jury, and solely because of unfamiliarity on my part with the complex subject, the trial was plunged into after short discussion with the lawyers and without the aid of trial briefs from either side. The only comfort was attained from previous experience that no matter how abstruse the matter for the judge to understand, it could always be presented to the jury with high-sounding legal discussion and then left to them to unravel "by the exercise of their good judgment and common sense." It was then my purpose, as I had in the past when a little more unseasoned than now, to take a special verdict of answers to written questions on issues of fact and direct judgment either way in accordance with the answers. Rule 49(a), Federal Rules of Civil Procedure, 28 U.S.C.A., Singer v. Shaughnessy, D.C., 96 F.Supp. 506, 2 Cir., 198 F.2d 178. I was also aware that every attempt should be made to get a completed case with a jury verdict by the reservation of decision on motions. Fratta v. Grace Line, Inc., 2 Cir., 139 F.2d 743.

As the trial progressed, it became apparent that the time to research the law and formulate a charge would be unmercifully short. The evidence was all presented in one day because it was practically undisputed, and then came a forlorn night of meditation and study in an attempt to give some clarity, logic and seeming intelligence in the impending instructions to the jury.

The realization grew and grew, and still remains, that in reality, by the evidence presented, there were no disputes, questions or issues of fact for a jury to pass upon. The facts and circumstances involved in the transaction creating the problem were as simple as any could be in the course of human affairs. The allegations of the complaint were admitted except for insignificant denials of no importance. The evidence was in the same form as far as I was concerned as though the attorneys had stipulated the facts and asked me to apply the law which is so often done in these matters. With this feeling, I could not go through the mockery of charging a jury upon questions or issues of fact when I could see none present, even though I knew this would be the safest course to follow. I expressed my state of mind for the record at length (Tr. 110 et seq.) probably much better than now, continued my reservation of decision on the motions for directed verdict by both parties, and discharged the jury. My thought was to be briefed on this complex matter which has been such a source of trouble in the courts, and if the so-called issues of fact were as clear-cut and uncontested as I thought they were, to direct a verdict as a matter of law for the party in whose favor the law in my judgment pointed to. If my research after such briefing showed me in error in taking the case from the jury over the objections of the plaintiffs, I could still re-try the case before another jury with better understanding on my part.

It has taken several weeks of study to gain a fair comprehension of the applicable law from the myriad of judicial writings on this intricate statute. It makes one shudder to realize that ordinarily a question of this kind is to be considered as an ultimate question of fact to be submitted to a jury if a jury is insisted upon. Ferro v. Commissioner, 3 Cir., 242 F.2d 838, 841, footnote 2; particularly as to general jury verdicts see Keefe v. Cote, 1 Cir., 213 F.2d 651; Jones v. Griffin, 10 Cir., 216 F.2d 885. It is interesting to note that Judge Woodbury in the Keefe case admitted that the "net effect" test applied by the courts was not done with strict logic, and in the Jones case the District Judge below questioned whether or not the case was proper for the jury because it necessitated the construction of statutes to a great extent and then submitted it to the jury for a general verdict "with at least the assurance I can have your advice and counsel in the case."

Despite the complication from these cases that cause concern as to whether every question of this kind must be submitted to a jury in some dressed-up fashion to invent a factual proposition and conceal the great depth of legal construction, I am content now that on the record here there is no factual clash or dispute either directly or by inference that results in a question or issue of fact. It would seem that the ordinary rule prevalent in all civil jury cases should apply to the effect that a motion for a directed verdict should be granted as a matter of law where the uncontradicted and undisputed evidence supports legally without question the position of one side and makes legally insufficient the evidence for the other side to take the case to a jury. Brady v. Southern Railway Co., 320 U.S. 476, 479–480, 64 S.Ct. 232, 88 L.Ed. 239; 5 Moore's Federal Practice, 2nd Ed., pages 1044, 2314, 2317. In my judgment, as a legal proposition, upon the simple and uncomplicated facts present, the government must prevail.

The question here concerns simply the purchase on December 29, 1949, of two hundred shares of the common stock of The Addis Company, Inc. from the executors of the estate of Cothran P. Smith, who had died December 26, 1948. The sole business of the corporation was the conduct of an outstanding women's apparel store in Syracuse, New York, and to the time of his death Mr. Smith was practically the sole owner of such business from the year 1945. Of the outstanding issue of 2500 shares, at the time of his death Mr. Smith owned 2,480, and by previous transfer from him his wife, Rosamond, had ten and his nephew, Thomas W. Smith, who worked in the store, held ten shares. These two persons, the wife and nephew, were executors of the estate with another store employee, and also they constituted the majority of the board of directors of the corporation after the death of Mr. Smith. The repurchase of the stock by the corporation was an open, above-board transaction done pursuant to a resolution of the board of directors and resulted in the payment to the estate of $57,200 from the assets of the company for the transfer of the two hundred shares. Admittedly, this was done according to the testimony of Thomas W. Smith at the trial to obtain moneys for the payment of heavy state and federal inheritance taxes. Another impelling motive for this method was to avoid sale to an outside interest which had been an unfortunate experience of the late Mr. Smith previous to 1945. At the time of the purchase and sale of the 200 shares in 1949 the estate was the record owner of 2,480 shares, although under the will fifteen percent of these shares were bequeathed to the widow, fifteen percent to the nephew, Thomas W. Smith, with certain conditions, and the remainder in trust for the decedent's son Jerry, with several contingencies and conditions for final distribution of the trust. It is a matter of little, if any, dispute that at the time of the purchase the corporation had accumulated earnings and profits in excess of $650,000 accumulated in the years 1947, 1948 and 1949. It was agreed by the testimony that at the time of this

1949 transaction the corporation had no thought of any shrinkage or contraction of its business activities. To these agreed facts without any dispute as to their existence the correct criteria and tests judicially established must be applied.

A recent and leading case to first consider is one decided by the Court of Appeals, Second Circuit, Northup v. U. S., 240 F.2d 304, the reasoning therein, of course, controlling my decision. In that case Judge Medina made the test in these situations one of "appraising consequences". He continued with the clear statement: "We must ask whether, viewing the transaction as a whole, different results were produced by what was in form a partial liquidation from the results that would have been produced, under the circumstances, by a dividend. If such a difference is found, Section 115(g) is not applicable." At page 306. He eliminated without question the "legitimate business or corporate purpose test" that was used practically as the only support in Keefe v. Cote, supra, to sustain a general verdict in favor of the taxpayer. At page 307.

The criteria established in Northup v. U. S. is the same general search of the circumstances as set forth in other leading authorities to determine whether the distribution has the net effect of a taxable dividend. Flanagan v. Helvering, 73 App.D.C. 46, 116 F.2d 937, 939–940; Keefe v. Cote, supra. Although this same general principle is followed, specific guides as to certain circumstances have been discussed in Ferro v. Commissioner of Internal Revenue, 3 Cir., 242 F.2d 838, 841; In re Lukens' Estate (Lukens v. Commissioner) 3 Cir., 246 F.2d 403.

To apply the yardstick of Judge Medina, I cannot conclude that any different results were produced in this repurchase "by what was in form a partial liquidation from the results that would have been produced, under the circumstances, from a dividend." I can find no difference outside of the harsh fact of life that a dividend, if declared, would have been subject to the imposition of an income tax and thus, of course, reduce the money placed in the shareholder's hands by the corporation. Whether we consider the record holding that existed at the time of the transaction which was overwhelming for the interest of the estate, or consider the situation after the vesting of the title in the nephew and wife of certain percentages of the stock, it does not seem to me that the interest of the estate in the ownership and control of the corporation was substantially changed in the logical sense of the term "substantial". The circumstances here seem to fit perfectly within the four relevant circumstances outlined in the Ferro case, supra, 242 F.2d at page 841, and also the definition set forth in Keefe v. Cote, supra, 213 F.2d at page 656, as to the evaluation of the important factors to determine whether a partial liquidation in form is in reality a true dividend. Admittedly, the corporate ownership and control remained basically and substantially the same; no contraction of corporate business was to any degree contemplated; the shareholder needed the money to pay taxes, and immense corporation earnings and profits were available and used for the distribution. See also Boyle v. Commissioner, 3 Cir., 187 F.2d 557, 560.

The contention by the plaintiffs that the words of the statute "cancels or redeems" do not apply when the stock repurchased is held as Treasury stock is adequately answered in Keefe v. Cote, supra, 213 F.2d at page 655, Boyle v. Commissioner, supra, 187 F.2d at page 761, Wall v. U. S., 4 Cir., 164 F.2d 462, 465, and I would adopt such reasoning. Kirschenbaum v. Commissioner, 2 Cir., 155 F.2d 23, 170 A.L.R. 1389, practically disowned the contrary reasoning in this respect of Alpers v. Commissioner, 2 Cir., 126 F.2d 58. The emphasis by the plaintiffs to interpret strictly the terms "at such time and in such manner" is met by the discussion of the practical meaning of such phrases in Keefe v. Cote, supra, 213 F.2d at page 655. It is unfortunate that the 1950 Amendment

would exempt this transaction from the statute (26 U.S.C.A. § 115(g) (3), but such change only fortifies the conclusion in my mind that without this specific legislative exemption the transaction of 1949 here was logically and obviously within the terms of the then existing statute.

The motion by the defendant for a directed verdict made and reserved upon is granted. Judgment shall enter as a matter of law in favor of the defendant and dismissing the complaint. See Matteson v. U. S., 2 Cir., 240 F.2d 517. The motion by plaintiffs for a directed verdict is denied, and

It is so ordered.