522 P.2d 581

Ernest **LOMBARD** et al., Appellants,

v.

Emer **CORY** and Pearl Cory, husband
and wife, Respondents.

No. 11326.

Supreme Court of Idaho.

May 14, 1974.

John W. Barrett, James E. Scanlan, Moffatt, Thomas, Barrett & Blanton and Sallaz & Scanlan, Boise, for appellants.

Philip M. Barber, Elam, Burke, Jeppesen, Evans & Boyd, Boise, for respondents.

DONALDSON, Justice.

This case involves the issues of whether damages awarded by the jury for injuries sustained by plaintiffs-appellants are sufficient and whether the jury determined the amount of damages awarded by means of a quotient verdict.

On September 28, 1969, plaintiffs-appellants, Ernest and Delcine Lombard, together with their three children, were returning to their home in Boise from Eden, Idaho. They were passing through Mountain Home at about 9:00 o'clock p. m. when their car was struck by a pickup truck driven by defendant-respondent Emer Cory, who had just pulled out of a cafe parking lot and onto the highway. Mr. Lombard testified that the Cory's vehicle appeared in front of him without warning and that there was no time to avoid being hit. Mr. Cory testified that he thought that he had plenty of time in which to pull onto the highway, but that loose gravel along the shoulder of the road caused his tires to spin, thereby causing the accident.

Following the accident, the occupants of the two vehicles were taken to the Mountain Home Hospital for treatment of their injuries. Mr. Lombard testified that he was seated three or four feet from Mr. Cory in the emergency room and that he smelled alcohol on his breath. The police officer who investigated the accident testified that respondent Cory appeared intoxicated. Respondent testified that he had consumed three drinks earlier in the day, but that he had not drunk any alcohol within six hours of the accident and that he was not drunk when the accident occurred.

As a result of the accident, Mr. Lombard suffered injuries to his right knee when it struck the steering column. Surgical repair to the knee was required. Mrs. Lombard was thrown into the windshield, breaking the glass and cutting the right side of her face. Glass fragments lodged in her face. After striking the windshield, she bounced back to the seat, striking her left side against a metal strip on the side of the seat. This caused injury to her left kidney and eventually necessitated the removal of one quarter of the kidney.

After hearing the testimony and viewing the evidence, the jury found for the plaintiffs-appellants and awarded them their total medical expenses of $2,533.45, plus their children's of $90.00. They also awarded Mr. Lombard general damages of $2,700.-00 and Mrs. Lombard $3,818.00. The trial court in entering judgment on the verdict added $400.00 to the jury's award, that sum being the wages lost by Mrs. Lombard while she was recuperating. By mistake, this sum had not been submitted to the jury.

Subsequent to the entry of judgment, the foreman of the jury stated in two sworn affidavits that after retiring to deliberate, the jury held a free and open discussion on the question of liability and damages. They first determined that the respondents were liable. Then, in order to arrive at a figure for damages, each juror wrote down on a slip of paper the amount he or she thought was proper as general damages for Mr. Lombard and Mrs. Lombard. These figures were then averaged. In the case of Mr. Lombard, the jury then raised the

average. In the case of Mrs. Lombard, the figure reached was the jury's award. However, in both cases, there was no agreement made in advance to be bound by the average arrived at and in both cases the average figure was discussed and then voted upon.

After the judgment was entered, appellants moved for a new trial on the grounds that the damages awarded to Mrs. Lombard were not sufficient and that the verdict of the jury was a quotient verdict and therefore void. The district court denied the motion and appellants have appealed from the order of denial. They have also appealed the refusal of the trial court to grant their motion for directed verdict made at the close of the testimony and to only submit to the jury the question of damages and from the judgment rendered in their favor.

■■■ Turning first to the refusal of the district court to grant appellants' motion for directed verdict. Appellants requested the trial court to rule that as a matter of law the respondents were liable for damages and submit to the jury only the question of damages. The trial court correctly refused to do so in as much as there existed the questions of fact as to whether Mr. Cory was intoxicated and whether Mr. Lombard maintained an adequate lookout. Directed verdicts should only be granted when the evidence is so clear and undisputed that all reasonable minds must reach the same conclusion. Thomas v. Hinton, 76 Idaho 337, 281 P.2d 1050 (1955); Wilson v. United States, 154 F.Supp. 341 (D.C.N.D.New York 1957); Standard Accident Insurance Co. v. Winget, 197 F.2d 97 (9th Cir. 1952). Since there was evidence which could have supported a verdict in favor of respondents, the district court properly denied appellants' motion.

■■■ However, even assuming arguendo that appellants were entitled to a directed verdict, the trial court's failure to grant it would not be grounds for reversal by this Court since the jury found in favor of the appellants. Because the jury did find in their favor, the refusal to direct verdict in their favor would be harmless error and therefore not grounds for reversal.

"Harmless error. No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for the vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." I.R. C.P. 61.

■■■ One of the grounds advanced by appellants in their motion for a new trial and on this appeal was that the jury reached its verdict by chance by rendering a quotient verdict. It is well settled that this Court will not upset a denial of a new trial by the district court without a clear showing of abuse of discretion. Davis v. Bushnell, 93 Idaho 528, 465 P.2d 652 (1970); Archer v. Shields Lumber Co., 91 Idaho 861, 434 P.2d 79 (1967). Of course, if the jury's verdict was a quotient verdict, then it was an abuse of discretion for the trial court to deny a new trial. I.C. § 10–602(2).

■■■ This Court has long adhered to the rule that where each juror submits the amount of damages he or she thinks is proper and these are averaged, it is not a quotient verdict so long as the jurors do not agree in advance to be bound by the average reached.

"A verdict is not subject to be challenged on the ground that it was a chance verdict because the jurors during the course of their deliberation, in order to compose their differences of opinion as to the amount that should be allowed, undertake to average their judgment, unless it clearly appears that before doing

so they each severally agree to be bound by the result of such chance methods after the result has been reached." Cochran v. Gritman, 34 Idaho· 654, 672, 203 P. 289, 295 (1921).

*See* Clark v. Foster, 87 Idàho 134, 391 P.2d 853 (1964); Butland v. City of Caldwell, 51 Idaho 483, 6 P.2d 493 (1931); Giffin v. City of Lewiston, 6 Idaho 231, 55 P. 545 (1898).

Here, the foreman of the jury stated that there was no agreement made in advance to be bound by the average figure. The action of the jury raising the amount awarded to Mr. Lombard clearly shows that the jurors did not consider themselves to be bound by the average. Thus, we cannot say that they reached their verdict by chance or that appellants are entitled to a new trial because of the manner in which it was reached.

■ Appellants also contend that they should be granted a new trial because the jury's award of $3,818.00 to Mrs. Lombard for general damages is, as a matter of law, inadequate. Appellants have cited cases from other jurisdictions involving injuries to kidneys in which awards greater than the one made in this case were held to be not excessive.[1] However, while the Court may refer to those cases as a guide, they are not controlling. Each case must be decided by its own facts.

"The use of verdicts from other areas as a guide for testing the inadequacy or excessiveness of any particular verdict is proper but extreme care must be exercised in use of such a guide, for no case of personal injuries is an exact and binding precedent for another upon the matter of the injuries sustained. The amount of damages that may properly be awarded in any particular case depends upon the facts and circumstances of that case, and hence, the verdict and judgment in another case of similar character is not a controlling criterion; [citing cases]. In Hubble v. Record, 80 Idaho 403, 411, 331 P.2d 270, 274, this court stated:

'In determining whether the judgment as it now stands is excessive it would be of little help to attempt to compare such judgment with the amounts of verdicts granted by juries and approved by the courts in cases from other jurisdictions.'" Mendenhall v. MacGregor Triangle Co., 83 Idaho 145, 150, 358 P.2d 860, 862 (1961).

The evidence shows that as a result of the accident, it was necessary to remove one fourth of Mrs. Lombard's left kidney. This operation required that she be hospitalized for nine days. An incision was made on her left side just below her rib cage which was fourteen to sixteen inches long. As a result of this incision Mrs. Lombard testified that she has a bulge on her left side at the waist. During the surgery, a congenital defect which resulted in Mrs. Lombard's having two drainage systems for the left kidney, rather than the normal single drainage system, was corrected.

Mrs. Lombard testified that she suffered emotional distress over the possibility of losing her other kidney. However, the urologist who treated Mrs. Lombard and performed the surgery testified that in his opinion she was cured. Both he and a urolgoist who testified for the respondents stated that the removal of one fourth of one kidney should have no effect on her, that she has more than adequate kidney tissue left to lead a normal life. Respondent's urologist also testified that he thought that she would have sufficient kidney tissue to sustain life even if she lost

---

1. *See* Birmingham Electric Co. v. Farmer, 251 Ala. 148, 36 So.2d 343 (1948); Harvey v. Gardner, 359 Mo. 730, 223 S.W.2d 428 (1949); Burns v. Kansas City Public Service Co., 273 S.W.2d 184 (Mo.1954); Gillett v. Gillett, 168 Cal.App.2d 102, 335 P.2d 736 (1959); Phillips v. United States, 182 F. Supp. 312 (D.C.E.D.Va.1960); Dammann v. Turner Cartage & Storage Co., 48 Ill.App.2d 65, 198 N.E.2d 352 (1964); McKirchey v. Ness, 256 Iowa 744, 128 N.W.2d 910 (1964); Mack v. McGrath, 276 Minn. 419, 150 N.W.2d 681 (1967).

her other kidney in the future. However, neither urologist could foresee her having any future complications caused by her surgery.

 When the testimony of the two urologists to the effect that the loss of one fourth of one kidney will have no lasting effect on Mrs. Lombard is taken into consideration with the fact that the jury fully compensated her for her lost wages, medical expenses, plus general damages of $3,818.00, it is not possible for this Court to say that the jury's award was, as a matter of law, insufficient. The decision to grant a new trial lies within the sound discretion of the trial judge, who had the opportunity to hear the witnesses and examine the evidence. The only function of this Court is to determine whether the trial judge has abused his discretion in denying the appellants a new trial. Here, the jury, after hearing the evidence, awarded Mrs. Lombard $3,818.00 in general damages. This initial determination is for the jury. The trial judge, as was his duty when the motion for a new trial was directed to him, then determined that there was evidence supporting the jury's verdict. Blaine v. Byers, 91 Idaho 665, 429 P.2d 397 (1967). Although the award for damages reached by the jury may seem modest, there is substantial evidence supporting it in the record. Thus, it was not an abuse of the trial court's discretion to deny the appellants a new trial and we affirm that decision.

Appellants have also appealed directly from the judgment entered in their favor. As we have already stated, there is substantial evidence supporting the verdict upon which judgment was entered and thus we may not set it aside. I.C. § 13–219.

The judgment is therefore affirmed. Costs to respondents.

SHEPARD, C. J., and McQUADE and McFADDEN, JJ., concur.

BAKES, Justice (concurring specially):

As the majority points out, it has long been the rule in Idaho that if jurors do not agree to be bound in advance they may average their own personal judgments of how much a party should recover and submit that amount as their verdict. Clark v. Foster, 87 Idaho 134, 391 P.2d 853 (1964); Butland v. City of Caldwell, 51 Idaho 483, 6 P.2d 493 (1931); Cochran v. Gritman, 34 Idaho 654, 203 P. 289 (1921). While we ought not to lightly overturn precedent of such long standing, the soundness of that rule escapes me. Even though a juror might agree in advance to be bound by such an averaging process, a juror is truly never bound by the verdict until it has been returned in open court and the jury polled. Only after that time is a juror bound by the results of any such averaging process.

The vice of the averaging procedure is that jurors give up their individual judgments to an arithmetical process. The rule which we have followed for many years in this state attempts to distinguish between legally acceptable averaging and unlawful averaging on the basis of an irrational distinction, i. e., did the jurors agree to be bound in advance. Since jurors are never bound until their verdict is rendered and they are polled, the distinction which has been historically drawn in this state is not really meaningful. It is time that we reexamined the cases relied upon by the majority to see if they really improve the judicial process.