596 P.2d 785

Richard A. BENTZINGER and Joann Bentzinger, husband and wife, Plaintiffs-Appellants,

v.

Wiley E. McMURTREY, Defendant-Respondent.

No. 12573.

Supreme Court of Idaho.

June 5, 1979.

Rehearing Denied July 20, 1979.

L. Clyel Berry and Emil F. Pike, Twin Falls, for plaintiffs-appellants.

Karl Jeppesen of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for defendant-respondent.

SHEPARD, Chief Justice.

This is an appeal from a judgment based on a jury verdict and a denial of motion for additur or new trial in an action for personal injuries arising from an automobile accident. We affirm.

The sole question presented on this appeal is the inadequacy of the jury verdict as a matter of law. Appellants assign no error involving evidentiary matters or claiming that jury instructions were erroneous. Our inquiry is, therefore, confined to whether the jury verdict is supported by sufficient facts or whether the verdict is inadequate as a matter of law.

Joann Bentzinger, who was five months pregnant, was a passenger in a car which was struck by a vehicle driven by defendant-respondent McMurtrey. The Bentzinger car was stopped at the time of the collision. The evidence could be viewed as indicating that the collision was very slight: the damage to the Bentzinger vehicle consisted of a dent in the left front door; there was no damage to the McMurtrey vehicle;

there was no injury to any occupant of the McMurtrey vehicle; the Bentzinger vehicle was not moved from its stopped position; and the McMurtrey vehicle stopped side-by-side with the Bentzinger vehicle. Mrs. Bentzinger was not thrown from her seat nor did she strike any other part of the car.

This action was filed on the basis of injury to the lower back of Mrs. Bentzinger and sought to recover her medical expenses for pain and suffering occasioned by the injury and by anxiety about the condition of the unborn child, for reduced earning capacity and for loss of conjugal relations. Defendant McMurtrey admitted liability and a trial was had only on the issue of damages. The jury returned a verdict of $1,000.00, $574.60 of which apparently was for direct medical expenses. The Bentzingers made a motion for additur or new trial, which motion was denied by the trial judge on the basis that there was sufficient evidence to sustain the jury's verdict.

 It is axiomatic that a factual determination made by a jury will not be overturned if it is sustained by the evidence. This is particularly true in tort actions where the damages cannot be ascertained with mathematical precision. Hence, where such injuries are subjective and measurable with only an approximation of certainty, their award is primarily a question for the jury and an appellate court should interfere with such a verdict only in the most exceptional circumstances. *Gonzales v. Hodsdon,* 91 Idaho 330, 420 P.2d 813 (1966). *See also Wisdom v. Henderson,* 98 Idaho 45, 557 P.2d 1118 (1976); *Lombard v. Cory,* 95 Idaho 868, 522 P.2d 581 (1974). We have examined the record and find the evidence sufficient to sustain the verdict of the jury. While it is modest and the evidence might have sustained a larger award, nevertheless we cannot say as a matter of law that there was an abuse of discretion on the part of the trial judge in denying the motion for additur or new trial. *Wisdom v. Henderson, supra; Lombard v. Cory, supra.*

The judgment is affirmed.

DONALDSON and BAKES, JJ., and SCOGGIN, J. Pro Tem., concur.

BAKES, Justice, concurring specially:

Had the appellant herein articulated before both the trial court and this Court the argument and analysis which the dissenting opinion of Justice Bistline makes with regard to a motion for new trial pursuant to Rule 59(a)(5), the trial court no doubt would have articulated his reasons for denying the motion more in keeping with the language of I.R.C.P. 59(a)(5), and the majority opinion would no doubt have addressed that issue more directly. However, the appellant did not do so, stating the issue on appeal to be "whether, under the facts as shown herein, damages in the total amount of $1,000 as promulgated in that judgment dated December 7, 1976, are inadequate as a matter of law." No issue was presented as to the denial of the motion for new trial, although in the course of the argument section of its brief appellant does state that, "It is also plaintiffs' contention that the Trial Court erred in denying plaintiffs' motion for a modification of judgment or in the alternative for a new trial." The only argument for that contention are two sentences which essentially state the same thing—that "[a] jury verdict which manifests disregard for the plain instructions of the Court on issues of damages and arbitrarily ignores the proven elements of damage should be set aside upon a motion for a new trial." Thus, the only suggestion that appellant was asserting on appeal that the trial court erred in failing to grant a new trial based upon the grounds of "inadequate damages, appearing to have been given under the influence of passion or prejudice," I.R.C.P. 59(a)(5), was the mere numerical reference to that rule at the end of the motion. Reading the trial court's decision and order denying the motion for new trial as a whole, it seems to me that he had in mind the requirements of Rule 59(a)(5) when he said that "it appears to me that there is no indication of passion or prejudice influencing the jury's verdict . . . ." While it might have been better for the trial court to articulate his determination in the exact language of I.R.C.P. 59(a)(5), it is

clear from the reading of the entire decision that he considered the I.R.C.P. 59(a)(5) grounds for a motion for new trial as Justice Bistline has cogently and exhaustively set out in his dissent. Certainly, if the appellant's motion before the trial court and brief on appeal can be fairly said to have adequately raised that issue, the trial court's decision appears to me to have adequately met it.

BISTLINE, Justice, dissenting.

The opinion of the Court states that Bentzinger's motion for a new trial or additur "was denied by the trial judge on the basis that there was sufficient evidence to sustain the jury's verdict," but more fully, the trial judge actually said in his memorandum decision and order, however, that "I cannot say as a *matter of law* there is insufficient evidence to support the verdict, and accordingly I cannot justify making any changes to it, and the motions for an additur, and for a new trial must both be denied." The Bentzingers' claim, however, was not that the evidence was insufficient to sustain this pitifully modest verdict, rather, their claim was that the damage award was so woefully inadequate that the grounds for a new trial given by I.R.C.P. 59(a)(5) were met and required a new trial.

Rule 59(a) states that "[a] new trial may be granted . . . for any of the following reasons: . . . 5. Excessive damages or inadequate damages, appearing to have been given under the influence of passion or prejudice." The rule became effective January 1, 1975, superseding former Rule 59(a) which made reference to statutory grounds for granting a new trial. These were contained in I.C. § 10–602, now repealed, and paragraph 5 of that section provided for a new trial only in the event of excessive damages. Prior to the new rule,

an award of inadequate damages was not grounds for a new trial. The function of a trial judge in passing upon a motion for new trial due to inadequate damages is, as might be expected from the short tenure of the rule, a proposition upon which there has been no occasion to rule. That we should do so here hardly seems disputable.

Although the Court's opinion does not discuss it, the trial court briefly alluded to the grounds of the motion by saying that "it appears to me that there is no indication of passion or prejudice influencing the jury's verdict." What the court had in mind is unclear but certainly a logical view is that he believed there had to have been some occurrence at trial which revealed or at least indicated prejudice [1] on the part of the jury, or some of them, against the Bentzingers, or against their cause of action. That this was most likely his view (and was argued to him on hearing the motion) is evidenced by the McMurtrey brief in this court, which states that the Bentzingers provided "[n]o citation to the transcript of the trial . . . to support the charge that prejudice or bias was injected into the trial."

In addition, the judge's language on sufficiency indicated that he believed his function to be that required by a Rule 59(a)(6) motion, although no such motion was made.[2] The proposition before him was whether he saw an extremely nominal award of damages, appearing to have been awarded under the influence of prejudice— *not* whether the evidence was sufficient to support the verdict. Where the question raised is the inadequacy of damages, obviously the evidence *is* sufficient to support the verdict rendered, *and that it is more than sufficient* is essentially the challenge. The long needed change in the rule which brings it to its current status makes inade-

1. Most would agree that passion would play little part in this type of action where general damages allowed by the jury were practically nil. Passion, or more aptly, compassion, could engender an award of excessive damages.

2. Rule 59(a)(6) provides for a new trial if the evidence is insufficient to justify the verdict or against the law. Bentzingers in moving specifically stated "This motion is made pursuant to Rule 59(a) subsection 5 of the Idaho Rules of Civil Procedure." They stated as their reason for moving that the damage award was "clearly inadequate and contrary to the evidence submitted." It could be said from that that they moved both under subsections (5) and (6).

quacy (as with excessiveness) in and of itself a ground for a new trial—not dependent upon sufficiency, thus avoiding the problems attendant to cases before the change where it was necessary to indulge in the fiction that an inadequate award could be established under the claim of insufficiency of the evidence to justify a verdict lower than it should have been.

There have been a number of cases declaring a trial court's function where the challenge is directed toward excessive damages. In *Mendenhall v. MacGregor Triangle Co.*, 83 Idaho 145, 358 P.2d 860 (1961), Justice McFadden wrote for the Court:

The determination of the question of excessiveness of an award by the jury first requires of the trial judge an examination as to the sufficiency of the record to sustain the award; then if he does determine the record is insufficient to sustain the award, he must next determine the amount of the award the record does sustain. The determination of proper recompense for pain and suffering in a personal injury action is one of great difficulty to the trial court. While such a determination in the first instance has been recognized repeatedly by this court as peculiarly within the province of the jury, . . . *yet the trial court has the responsibility to weigh the evidence and make the determination whether the evidence supports the verdict.* (emphasis added)

83 Idaho at 150, 358 P.2d at 862 (citations omitted).

The *Mendenhall* case quoted *Checketts v. Bowman*, 70 Idaho 463, 220 P.2d 682 (1950), and *Bond v. United Railroads*, 159 Cal. 270, 113 P. 366 (1911), which respectively stated:

"The remedy for excessive verdicts rests largely with the trial judge, *whose duty it is to carefully weigh the evidence* and not allow a verdict to stand for a greater amount than the evidence will reasonably justify, (citing cases)." (emphasis added)

" * * * We have cause to fear that the trial courts sometimes act on the theory that they can shift the responsibility

in this matter to the appellate court, and that an excessive verdict can be corrected on appeal. This is a mistake. Our power over excessive damages exists only when the facts are such that the excess appears as a matter of law, or is such as to suggest at first blush, passion, prejudice, or corruption on the part of the jury. . . . Practically, the trial court must bear the whole responsibility in every case."

*Mendenhall, supra,* 83 Idaho at 150, 358 P.2d at 862–63.

In a more recent case, *Blaine v. Byers*, 91 Idaho 665, 429 P.2d 397 (1967), the Court took the pains to repeat the foregoing statements from *Mendenhall, Checketts* and *Bond,* and proceeded to specify the trial judge's function in ruling on excessive damages claims:

Amount of damages is a question of fact, which is for the jury in the first instance and secondly for the trial judge on a motion for a new trial; and the trial judge, in this regard, has been likened to a thirteenth juror. . . . *The rule that where there is any competent evidence, though conflicting, to sustain the verdict, the verdict will not be set aside has no application to a trial court in passing upon a motion for a new trial. .* . Rather the discretion with which the trial judge is entrusted is a sound legal or judicial discretion, and the trial court may grant a new trial when it is satisfied the verdict is not supported by, or is contrary to, the evidence, or is convinced the verdict is not in accord with the clear weight of the evidence and that the ends of justice would be subserved by vacating it, or when the verdict is not in accord with either law or justice. . . . (emphasis added)

91 Idaho at 670–71, 429 P.2d at 402–03 (citations omitted). *Mendenhall, Checketts,* and *Blaine* were all pronouncements of a unanimous court.

It is true that in cases involving the amount of excessive damages, there may be a question of sufficiency of the evidence to sustain those damages, as mentioned in

*Mendenhall,* and this will be especially so in property damage cases. Where the contention is that the award is so great as to appear to have been given by jurors activated by passion or prejudice, a more narrow question is presented within the confines of a rule 59(a)(5) motion, and the question to be answered is *not* one of law, "since the Idaho cases make plain that the trial judge is not restricted 'as a matter of law' in considering excessive verdicts." *Blaine v. Boyers, supra,* 91 Idaho at 670, 429 P.2d at 402. The question is answered only by a *weighing* of the evidence, and considerations of doing substantial justice. That is the function of the trial court, conferring upon that court a power and commensurate obligation unequaled elsewhere in civil cases tried to a jury.

In ruling on such a motion, it is not required that the movement must be able to point to the record of proceedings and demonstrate some occurrence which created jury passion or prejudice. This is true whether the Rule 59(a)(5) motion for a new trial is by a defendant complaining of an excessive award or by a plaintiff complaining of an inadequate award. Trial courts, unlike jurors, have the advantage of having heard *and determined* many hundreds of damage claims. A trial court in a jury trial hears exactly the same evidence as the jury hears, and makes his own inward assessments of credibility and weight. Should the parties happen in mid-trial to stipulate to a dismissal of the jury and for submission of all issues to the court, then the court will decide all issues including liability. Older practitioners will remember bygone days when, on both parties moving for a directed verdict, the court could dismiss the jury and resolve all issues, including damages.

So, when after a trial the jury returns a verdict which is thereafter assailed, either as excessive or as inadequate, the trial court's judgment is then called into play, requiring of him a *weighing* of the evidence. The sole question on a Rule 59(a)(5) motion is the amount of the jury's damage award, as compared to the amount of damages the trial court on his view of the evidence would have awarded. Where the court's judgment coincides with the jury's, with little disparity either way, that will be the end of the matter. But where the disparity is so great as to suggest, not establish, that the award is what might be expected of a jury acting under the influence of passion or prejudice, the court will in the interests of justice grant a new trial or, alternatively, as a condition to denying the motion, order a remittitur, and if permissible by statutory or case law, an additur.

The importance of the trial court's function on such a motion cannot be overestimated. As suggested in *Blaine v. Byers, supra,* it simply will not do for a trial court to sidestep the issue with expectation that the appellate court will resolve the matter anyway. For one thing, as was so well pointed out in *Mendenhall, supra,* Rule 59(a)(5) motions place the whole responsibility on a trial court which court, not this, is the proper court to make a determination which necessarily entails a *weighing* of the evidence. The extent of that responsibility, and power, was well stated by Justice McFadden in writing for a unanimous Court:

> "[T]he trial court may set aside a verdict and *grant a new trial whenever* it appears to the trial court that the verdict is contrary to the law or evidence or that *the verdict fails to render substantial justice.*"

. . . . .

> "[T]he trial judge was in a position to see and hear the witnesses speak. He could observe their demeanor on the witness stand, and consequently was in a better position *to judge their credibility and to weigh their testimony* than is this court . . . ." (emphasis added)

*Rosenberg v. Toetly,* 93 Idaho 135 at 138–139, 456 P.2d 779 at 782–783 (1969).

Therein, where it was contended that "where there is substantial competent evidence to support the jury's verdict, it is an abuse of discretion for the trial court to set it aside," and that a trial court doing so is thus usurping the function of the jury, the

278

Court held that the rule which prohibits an appellate court from reversing a district court judgment so supported is not applicable to a district judge ruling on a motion for a new trial. *Id.*, 93 Idaho at 139, 456 P.2d at 783.

Three years later the Court, speaking this time in an opinion authored by Justice Shepard, observed that it had many times, most recently in *Rosenberg v. Toetly, supra,* and in *Blaine v. Byers, supra,* said:

". . . this court is firmly committed to the rule that a trial court possesses a discretion to be wisely exercised in *granting or refusing to grant,* a new trial and that such discretion will not be disturbed on appeal unless it clearly appears to have been exercised unwisely and to have been manifestly abused."

*Meissner v. Smith,* 94 Idaho 563, 566–67, 494 P.2d 567, 570–71 (1972).

It is clear, then, that the Court has been consistent in (1) recognizing the trial court's important function in passing on motions for new trial, and (2) upholding the trial court's grant or denial of such a motion unless the trial court has manifestly abused the wide discretion vested in it, or, as in *Meissner, supra,* misconceived the law or, as suggested in *Blaine v. Byers, supra,* unless the trial judge has applied a "question of law" rule to a decision which must be made as question of fact. That doctrine is sound, it is well established, and should be adhered to. The strength of the judiciary is found in resolute and just trial judges who, after all, are the only ones who can really know whether the quest for justice has been fulfilled or has miscarried.

Here the trial judge had only one question before him, *i. e.,* the alleged inadequacy of the damages awarded by the jury. Unlike some of the cases above mentioned, liability, having been here admitted, was not an issue, and therefore likewise no problem was whether the claim of inadequate damages was intertwined with the jury's resolution of fault, in which situations juries are known to have compromised the fault and damage issues.

Had the trial court, in denying the motion, stated his conclusion that the damages awarded were "in the ball park" with what he would have awarded, then, but only then, might my vote be to affirm.[3] His own statement, however, shows that he did *not* judge the credibility of the witnesses and weigh their testimony, but rather, performed his decisional process under the belief that he could interfere with the jury verdict only if he could "say as a matter of law there is insufficient evidence to support the verdict." The error in this approach was compounded by his belief that he could not grant relief where he could not find any "indication of passion or prejudice influencing the jury's verdict." As stated, above, it is not necessary to find evidence of passion or prejudice—but rather to find that the damages awarded are so disproportionately low or high as to *appear* to have been given by a jury which was so improperly influenced. Under our present case law, if a person impaneled for jury duty is prejudiced against a party, or against that party's cause of action,[4] or defense, and yet manages to escape detection in the selection process, all of the affidavits in the world from other jurors so stating are not permis-

3. In *Cleva v. Jackson,* 74 Wash.2d 462, 445 P.2d 322 (1968), a case almost four-square with this (light impact—little car damage—defendant's concession of negligence—subjective nature of injuries) the trial court stated:

The medical testimony was that plaintiff received injuries causing pain and disability as a proximate result of the accident. No doctor testified that she had fully recovered at the time of trial. All agreed that further treatment was necessary. The medical expense to the time of trial was $1,027.00, car repair and rental for a substitute car was $343.92. The sum of these items is

$1,370.92. The verdict of $1,500.00 left only $129.08 for pain and suffering, future medical expense and disability and lost wages. The verdict was clearly inadequate.

4. There is no reason to belabor this point, and certainly it is well known by the trial bar and trial bench that prejudice has been admitted to exist against lawsuits in general, and personal injury actions in particular, especially automobile collisions. Prospective jurors have been known to admit to a belief that any person driving on the highways assumes the risk that he may be injured.

sible to serve as grounds for vitiating the jury verdict. The main fault here, however, is the "matter-of-law" approach which, while it has applicability in making rulings on summary judgment motions, and in passing on motions for judgment n. o. v., is not properly applied to the vastly greater discretion properly placed in our district judges in passing on motions for new trials, generally, and especially where the damage award is challenged by a Rule 59(a)(5) motion.

The prior holdings of this Court, and in particular, *Meissner v. Smith, supra,* clearly require that both the judgment and order of the district court be reversed. The holding of this case should be simply to reaffirm prior decisions, recent ones, holding that the function of a trial court, faced with a Rule 59(a)(5) motion for a new trial based on either inadequate or excessive damages, is exactly the same, involves a weighing of the evidence, and an award of a new trial where the damages granted by the jury are such as appear to be the result of influence of passion or prejudice. For another day, and another case should be reserved the question of whether this jurisdiction will join Colorada, Arizona and Washington in allowing *additurs* concomitant to our new Rule 59(a)(5). *Reynolds v. Farber,* 577 P.2d 318 (Colo.App.1978); *Tryon v. Naegle,* 20 Ariz.App. 138, 510 P.2d 768 (1973); *Cleva v. Jackson,* 74 Wash.2d 462, 445 P.2d 322 (Wash.1968); *Hills v. King,* 66 Wash.2d 738, 404 P.2d 997 (1965); and *Shaw v. Browning,* 59 Wash.2d 133, 367 P.2d 17 (1961). Bentzingers, although they did alternatively ask for additur in moving for a new trial, have not pursued that request in this Court. Hence neither side has briefed or argued the additur issue, which some courts have seen as an issue of constitutional dimension.

Not only did the defendant admit liability, but defendant here put on no case whatever, calling no witnesses. Hence, no problem is here created by the presence of conflicting evidence as to the extent of Mrs. Bentzinger's injuries. Extremely able counsel represented the defendant and it would be unusual were this a case where defendant did not avail itself of its right to have Mrs. Bentzinger submitted for an examination by physicians, including specialists, of its own choice. Whether that be so or not, defendant did not present any such witnesses, thus leaving the jury, and the court, to consider only the testimony of Mrs. Bentzinger's doctors. In this regard, unlike the usual case, Mrs. Bentzinger because of her pregnancy, was regularly seeing Dr. Wells who was thus in a admirable position to testify as to her condition both before and after the collision, and at the time of trial. His testimony established prior to the collision her state of health was good and when he saw her hospitalized after the collision, she was experiencing pain caused by the collision. She was discharged and then readmitted a few days later for recurring pains in the lower lumbar spine area.

After the birth of the baby, he testified:

A Well, she persisted in having back pain that she had complained of during her pregnancy, which I thought probably related to the pregnancy. A lot of women have back trouble during pregnancy. I didn't really give much concern during the last months of pregnancy; however, she persisted in having back pain a month after delivery.

Q And did you recommend any studies to be done at that time?

A Yes, we got X-rays of her lower spine and sacrum.

Q And what did those—and did you read those X-rays, Doctor?

A I read them and they were read by a radiologist and they were interpreted as being normal.

Q And interpreted, the X-rays were interpreted as being normal? Now, the fact of the X-rays showing as normal, does that rule out all problems with reference to the lumbo-sacral spine?

A No, it doesn't.

Q What problems, what possible problems could exist in the lumbo-sacral spine which would not be revealed by X-ray evidence?

A There is most likely a herniated disk, lumbar disk, which would not show up on X-ray. Soft tissue is not revealed by X-rays. Acutely or within the first year or so after a herniated disk, it doesn't show up by routine X-ray studies.

At that time he concluded that she should see an orthopedic surgeon if the pain continued to persist. For control of the pain he placed her on a codeine compound and advised her to avoid lifting and twisting.

During his direct examination, defense counsel, on the presentation of Dr. Wells' medical payments, received permission to voir dire, and the following exchange transpired:

Q Doctor, are all of the items on the Exhibit 8 strictly related to the accident rather than to her pregnancy?

A Yes, sir, they are.

Following that, Mrs. Bentzinger's counsel asked if her hospitalizations were directly and proximately from the accident, and the doctor stated such was the fact. On cross-examination of Dr. Wells, defense counsel proposed no question whatever that suggested or intimated that Mrs. Bentzinger's back pain was caused by her pregnancy. The question was asked whether the only way that the extent of the pain could be known would be what Mrs. Bentzinger said, to which the doctor replied in the affirmative.

Dr. Tregoning of Boise, Idaho was the orthopedic surgeon consulted by Mrs. Bentzinger. Responsive to a question asking him to describe his examination of her, he testified:

A Yes. This was an examination of her back, since this was her area of complaint. There was noted to be tenderness over the lumbosacral area. Motions of her back were fine. The Lasague test, which is also called a straight leg raising, which is a test that stretches the sciatic nerve, gave her pain at about 45 degrees; in other words, when her leg was about half way to a right angle.

There was also some diminished sensation over her right leg. The knee jerk on this side was gone, but there was no notable weakness. We also made some X-rays, and these didn't show any bony abnormality.

He diagnosed her as an injury to her disc with conservative treatment indicated. He provided her with a corset, prescribed medication, and initiated exercise including walking. He stated that she improved with the treatment, also giving his opinion that she probably will always have some moderate problems with her back. Asked for his opinion as to the cause of her injury, he stated that to a reasonable medical certainty the collision was responsible.

On cross-examination he was asked if the prescribed exercise would be good for everybody, and agreed to that. He agreed with a question suggesting that "back discomfort that people generally have can be attributed to bad posture," but added that Mrs. Bentzinger "had *findings* more than bad posture." Asked if being delivered of a child could have some bearing upon her low back pain, he answered that such was not normal as a part of postpregnancy, with no further questions attempting to relate her pain and disability to her pregnancy rather than to her injury.

Citing *National Ro-Tile Corp. v. Loomis*, 82 Idaho 65, 350 P.2d 217 (1960), *Russ v. Brown*, 96 Idaho 369, 529 P.2d 765 (1974) and *Olsen v. Hawkins*, 90 Idaho 28, 408 P.2d 462 (1965), Mrs. Bentzinger urges that "a jury must accept as true the positive, uncontradicted testimony of a credible witness, whether such witness is a party or interested in the events of action, unless that testimony is inherently improbable or impeached." She states that the testimony of the doctors remains unimpeached and uncontradicted and therefore must be accepted as true.

The cases cited fully support Mrs. Bentzinger in her contention. The full statement of the rule was for a third time set forth in a unanimous opinion authored by Justice Knudson in *Olsen v. Hawkins, supra*, at page 37, 408 P.2d 462, having first been stated in *Pierstorff v. Gray's Auto Shop*, 58 Idaho 438, 74 P.2d 171 (1937) and

again, betimes, in *National Ro-Tile Corporation v. Loomis, supra,* in which case the Court referred to the first statement of the rule in *Pierstorff* as excellent. The rule was applied in 1974 in *Russ v. Brown, supra,* in an opinion authored by Justice Bakes, and earlier in 1974 in *In re Estate of Stibor,* 96 Idaho 162, 525 P.2d 357. A rule firmly entrenched in Idaho jurisprudence, it again bears emphasizing, and for brevity, paraphrasing: A board, a court, or a jury *must* accept as true the positive, uncontradicted testimony of a credible witness, unless his testimony is inherently improbable, or rendered so by facts and circumstances disclosed at the hearing or trial; neither the trial court nor a jury may arbitrarily or capriciously disregard the testimony of a witness unimpeached by any of the modes known to the law, if such testimony does not exceed probability; testimony which is inherently improbable may be disregarded, but to warrant such action there must exist either a physical impossibility of the evidence being true, or its falsity must be apparent, without any resort to inferences or deductions.

Unless this rule of law is to be overruled, it has applicability here to the obvious malfunction of the jury, and equally has applicability to the weighing function the trial court was required to make responsive to the Rule 59(a)(5) motion.

Concluding, I suggest that the real tragedy in this case is the Court's unwillingness to accept the trial court's own statement that he applied the appellate review standard to the 59(a)(5) motion. The trial court is an able and experienced judge without any problems of articulation—yet it would seem that the Court is willing to assume that he weighed the evidence in passing upon the motion, notwithstanding that he clearly stated that he used the insufficiency-as-a-matter-of-law approach. Most troubling is that where this Court fails to reverse for that error, the trial court no longer has any jurisdiction and cannot himself remedy the error.

The special concurring opinion of Justice Bakes serves admirably to highlight the point of my disagreement with the Court's disposition of the case. He correctly points out that Bentzingers stated "the issue on appeal to be 'whether, under the facts as shown herein damages in the total amount of $1,000 . . . are inadequate as a matter of law.'" The controversy is here on appeal, where, as Bentzingers correctly state, our appellate review in passing on the inadequacy of the damages is a matter of law approach. We are in no position, as is a trial judge "to see and hear the witnesses speak. . . . to observe their demeanor . . . and to judge their credibility and to weigh their testimony . . ." *Rosenberg v. Toetly,* 93 Idaho 135, at 138–139, 456 P.2d 779 at 782–783 (1969).

Consequently, where we are asked to pass on damages challenged as excessive or inadequate, "Our power . . . exists only when the facts are such that the excess [inadequacy] *appears as a matter of law,* or is such as to suggest *at first blush,* passion, prejudice, or corruption on the part of the jury." *Mendenhall v. MacGregor Triangle Co.,* 83 Idaho 145, 150, 358 P.2d 860, 862, 863 (1961) (Emphasis added).

Hopefully it is clear that I would reverse the judgment on the grounds that the facts of this case are such that the inadequacy of the damages clearly appears *as a matter of law,* to which I add the damage award clearly appears to me to suggest prejudice on the part of the jury. I would reverse the order denying the motion for a new trial because the trial court—who was required to pass upon credibility and weigh the evidence (which we cannot do)—clearly and unequivocally stated that he made his decision applying the appellate matter-of-law standard. *Blaine v. Byers,* 91 Idaho 665, 429 P.2d 397 (1967).