606 P.2d 983

**SHIELDS & COMPANY, INC., an Idaho Corporation, Plaintiff-Appellant,**

v.

**Dover GREEN and Evelyn Green, husband and wife, Defendants-Respondents.**

**No. 12690.**

Supreme Court of Idaho.

Feb. 20, 1980.

Jon N. Wyman, of Wyman & Wyman, Boise, for plaintiff-appellant.

Ronald P. Rainey, of Alexanderson, Davis, Rainey & Whitney, Caldwell, for defendants-respondents.

DONALDSON, Chief Justice.

Plaintiff-appellant, Shields & Company, seeks to recover a real estate broker's commission in the amount of $4,080, plus interest, on the basis of a listing agreement signed by defendant-respondent Dover Green and an earnest money agreement signed by both Dover Green and his wife Evelyn. After two previous mistrials, the case was tried to a jury. The trial court excluded from evidence both the listing agreement and the earnest money agreement—the first because it violated the rules and regulations of the Idaho Real Estate Commission by not containing a proper description, the second because it did not contain a description sufficient to show that the parties agreed to what property, if any, was to be sold.

At the end of Shields' case, the Greens moved for a nonsuit, or alternatively, a directed verdict. The trial court granted their motion for directed verdict under I.R. C.P. 50(a) and Shields then moved for a new trial. The lower court denied the motion for new trial on the basis that Shields' request for oral argument was not stated on the face of the motion under I.R.C.P. 7(b)(3). Shields then moved to set aside the order which denied a new trial, claiming that the clerk of the court failed to give him a hearing date on his new motion and that oral argument had been requested on the face of the notice of hearing. This motion was also denied by the district court and Shields now appeals from all three adverse orders. We reverse the orders of the district court and remand for new trial.

Shields and Company, Inc., is a real estate brokerage firm operating in Idaho. In 1973, Todd Tracy, an experienced real estate salesman, was employed as a licensed salesman with Shields. Tracy began general conversation with Dover Green about the sale of an eighty acre piece of farm property south of Nampa which the Greens were

purchasing on contract and on which they resided and farmed.

On August 29, 1973, Tracy showed the Green property to Wade Hicks, a building contractor whom Tracy had known for about four years. Tracy told Hicks there was a possibility that Green would want to reserve from sale the acreage on which he lived, and a 10 acre area on the west side of the property. This left approximately 68 acres available for sale.

After these negotiations with Hicks, Tracy approached Green and asked Green to sign a listing on the property for a thirty day period. According to Green, Tracy requested that he sign the listing so that Tracy could show his boss some work product. Green signed the listing agreement, but his wife did not.

The listing agreement showed a handwritten legal description which comprised eighty acres. The legal description stated that the land was in Canyon County even though the form language stated the property was in Ada County. The agreement did not set forth boundaries for marking off 68 acres, the portion of Green's property listed as being for sale. Other than a purchase price of $68,000, a brokerage fee of 6% of the purchase price and a location described as "Deer Flat & Robinson Road," all other terms were left blank.

Anticipating a sale of the property to Hicks, Tracy prepared two drafts of an earnest money agreement, but neither of these was signed by the Greens. On the evening of August 30, 1973, Tracy brought a third version of the earnest money agreement to the Green residence. According to Green, Tracy told him that he had five days to look it over and make any changes he desired. Tracy just told him to sign it so that he and Hicks could get out of the Greens' way and allow them to have dinner. Throughout the trial, Green stated that his conversations with Tracy were always in terms of "if he ever sold." Mrs. Green testified that she signed the agreement even though she had not read it and had no intention of selling the property.

After dinner, Green read the agreement, realized that it did not represent what had been discussed with Tracy, and tried unsuccessfully to contact Tracy. Green then contacted Hicks and told him the terms were different from any discussed with Tracy.

The earnest money agreement provided a legal description of the Green property as an 80 acre tract. It then reduced the 80 acres to 68 acres by means of a "consisting of" clause, without any guidance as to which 68 acres of the 80 were to be sold. The agreement provided that the buyer would assume a pre-existing contract in the amount of $22,000, payable at the rate of $1,000 per year, but no date was provided for payment. A provision requiring the buyer to pay "an additional $4,000 to be paid on or before January 15, 1974," failed to mention whether that amount was payable on the contract or to the seller. The balance of the purchase price was to be paid by the buyer, with $1,000 payable on December 1, 1973 as principal on the $22,000 contract, and paying $2,000 per year thereafter plus interest. Yet the agreement failed to state whether the annual $2,000 payment was to go to the Greens or to the holders of the contract, and it did not provide for a time for annual payment. The agreement also failed to provide for a survey of the property, even though one had been contemplated by the parties in the event of sale.

Ultimately, no sale agreement was ever reached since Hicks never offered terms for sale which Green was willing to accept. The Greens remained contract purchasers of the property and Hicks found another 80 acre parcel to subdivide shortly thereafter. Shields then brought suit for recovery of a broker's commission of 6% of the $68,000 purchase price, or $4,080. Based on the defects mentioned above, the trial court excluded both the listing agreement and earnest money agreement and directed a verdict in favor of the Greens. From dismissal of its case, Shields appeals.

Appellant raises numerous issues on appeal, of which we need consider only one:

whether the district court erred in granting a directed verdict in favor of respondents. As this issue is dispositive of the case, we need not consider the other issues raised.

■■ A directed verdict should only be granted when the evidence is so clear and undisputed that all reasonable minds must reach the same conclusion. *Lombard v. Cory*, 95 Idaho 868, 522 P.2d 581 (1974). On a motion for directed verdict pursuant to I.R.C.P. 50(a), the moving party admits the truth of the adverse evidence and every inference that may be legitimately drawn from it. *Barlow v. International Harvester Co.*, 95 Idaho 881, 886, 522 P.2d 1102, 1107 (1974); *Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 518 P.2d 1194 (1974). Where there is substantial competent evidence tending to establish plaintiff's case, or where reasonable minds may differ as to the conclusion to be reached from the evidence, the cause should be submitted to a jury. *Allan v. Oregon Short Line Railroad Co.*, 60 Idaho 267, 273, 90 P.2d 707, 709 (1938); *accord, S. H. Kress & Co. v. Godman*, 95 Idaho 614, 515 P.2d 561 (1973); *Petersen v. Parry*, 92 Idaho 647, 448 P.2d 653 (1968).

In the present case, the trial court concluded that the listing agreement and earnest money agreement were properly excluded because there was no evidence to indicate that there was ever any drawing of the boundary lines upon the 68 acre parcel. This created an inference that the parties were not in agreement as to this term in the listing agreement. Based on this lack of evidence the district court granted the motion for directed verdict.

■■ As appellant argued at trial and as this Court has held on several occasions, recovery of a broker's real estate commission need not depend upon a legal description of the property which would satisfy the requirements for specific performance of a real estate sales contract. Rather, recovery of a broker's commission is possible provided it is shown that there is no misunder-

standing between the property owner and the broker as to the property to be offered for sale, and where it is sufficient to enable the broker to locate the property, show it, and point out its boundaries to a prospective purchaser. *Garfield v. Tindall*, 98 Idaho 841, 843–844, 573 P.2d 966, 968–69 (1978); *C. Forsman Real Estate Co. v. Hatch*, 97 Idaho 511, 516–17, 547 P.2d 1116, 1121–22 (1976); *Central Idaho Agency, Inc. v. Turner*, 92 Idaho 306, 311, 442 P.2d 442, 447 (1968). The pivotal issue thus raised is whether the Greens and Tracy were in agreement as to what property was to be sold. If such an understanding existed between the parties, the listing agreement would presumably be valid, entitling Shields to recovery of its commission, regardless of whether the earnest money agreement was invalid. In order to determine whether the parties had reached a mutual understanding for purposes of the commission, the trial court should have allowed into evidence the listing agreement and all competent extrinsic evidence relating to the understandings and agreements of the parties. Thus, on remand, this evidence should be admitted and considered by the finder of facts. *C. Forsman Real Estate Co. v. Hatch, supra,* 97 Idaho at 516–517, 547 P.2d at 1121–22.

■ Generally the determination of the existence of a sufficient meeting of the minds to form a contract is a question of fact to be determined by the trier of facts. *Care Display, Inc. v. Didde-Glaser, Inc.*, 225 Kan. 232, 589 P.2d 599, 604 (1979); *see* 17A C.J.S. Contracts § 611 at 1227. Conversely, if the evidence is insufficient, undisputed or conclusive as to the existence or terms of a contract, it should not be submitted to the jury. 17A C.J.S. Contracts, *supra* at 1228.

■ The evidence adduced at trial indicates a conflict which properly precludes the granting of a directed verdict. The listing agreement did not contain on its face a legal description which specified the boundaries for the 68 acre parcel. Language in the agreement which provided

that a correct legal description would be attached in the event it was omitted, incomplete or inaccurate was not complied with by Tracy. When asked at trial to draw the boundary lines on a blackboard, Tracy's drawings differed materially from those drawn by Green.

This evidence, however, conflicts with the testimony given by Tracy, who testified that prior to the signing of the listing agreement he had talked with Green on several occasions and had been told that a ten acre area on the west side of a winding ditch and a two acre area upon which the house was located were to be reserved. Further, within his deposition of December 13, 1974, which was made a part of the appellate record, and which was read into evidence at the trial, Green testified that Tracy knew where the boundaries were at the time the property was listed.

Construing this evidence most favorably for the nonmoving party, we cannot say that the evidence was so clear or undisputed that reasonable minds could not reach different conclusions, *Lombard v. Cory, supra.* The question was one rightfully reserved for factual determination, *Care Display, Inc. v. Didde-Glaser, Inc., supra.* We therefore reverse the order of the district court granting the directed verdict and remand for new trial.

Reversed and remanded.

BAKES, McFADDEN and BISTLINE, JJ., and SCHROEDER, J., pro tem, concur.