633 P.2d 1145

**THOMAS HELICOPTERS, INC., an Idaho corporation, Plaintiff-Respondent,**

v.

**SAN TAN RANCHES, a partnership; as individual partners, the following: William Albert Anderson, Gordon H. Anderson, R. Trent Anderson, Thomas M. Anderson, William A. Anderson, Jr., Ben W. Laverty III, Clifford L. Smith, John G. Anderson, Mack Martin, Jeffrey M. Martin and Michael K. Martin, Defendant-Appellants.**

**SAN TAN RANCHES, a partnership; as individual partners, the following: William Albert Anderson, Gordon H. Anderson, R. Trent Anderson, Thomas M. Anderson, William A. Anderson, Jr., Ben W. Laverty III, Clifford L. Smith, John G. Anderson, Mack Martin, Plaintiff-Appellants,**

v.

**SPRAY RITE, INC., an Idaho corporation, Defendant-Respondent,**

**and**

**Chemagro Agricultural Division, Mobay Chemical Corporation, Defendants.**

**No. 13191.**

Supreme Court of Idaho.

Sept. 9, 1981.

---

Lloyd J. Webb, Twin Falls, for appellants.

Robert M. Tyler, Jr. of Elam, Burke, Evans, Boyd & Koontz, Boise, Severt Swenson, Jr., Gooding, for respondents.

BAKES, Chief Justice.

This appeal involves consolidated actions by San Tan Ranches claiming that its potato crop was damaged due to the negligent application of Sencor, a herbicide, by Thomas Helicopters, Inc., and Spray Rite, Inc., to certain potato fields farmed by San Tan Ranches. San Tan Ranches is a large partnership farming operation. In 1976 the partnership grew approximately 3,600 acres of potatoes, of which 1,383 acres are the subject of this suit. San Tan purchased approximately 2,480 pounds of Sencor in December, 1975. During the spring of 1976 the potato fields were prepared and planted. Application of the previously purchased Sencor was contracted out to Thomas Helicopters and Spray Rite, and performed during the early weeks of June, 1976. Subsequent to the application of the Sencor, it became apparent that there was a severe weed infestation, which occurred in noticeable strips in some of the fields.

San Tan refused to pay Thomas Helicopters for the herbicide application, and Thomas Helicopters brought suit to collect its fee. San Tan counterclaimed for damages occurring from the weed infestation, asserting that the infestation was a result of Thomas Helicopters' negligence. In addition, San Tan brought suit against Spray Rite to recover damages under the same theory. The two cases were consolidated for trial. Apparently, it was then stipulated that San Tan Ranches would present its case on the counterclaim and that, should it lose, Thomas Helicopters could recover a judgment in the amount of $15,893.88 for work done. San Tan Ranches then presented its evidence. Thereafter, upon respondent's motion, the court directed a verdict in favor of Thomas Helicopters and Spray Rite pursuant to I.R.C.P. 50(a), stating in its order that "[i]t appearing as a matter of law that there is no substantial evidence which constitutes a prima facie case of negligence of Spray Rite, Inc., or Thomas Helicopters, Inc., that would justify submitting the case to the jury, nor any substantial evidence that San Tan Ranches could prove damages with any degree of reasonable certainty ... it is hereby ordered that judg-

ment should be entered in favor of [Spray Rite, Inc., and Thomas Helicopters, Inc.]." On appeal, San Tan argues that the evidence was sufficient to require a decision of the jury, and that the granting of a directed verdict was error.

As was stated in *Shields & Co., Inc. v. Green*, 100 Idaho 879, 882, 606 P.2d 983, 986 (1980),

> "A directed verdict should only be granted when the evidence is so clear and undisputed that all reasonable minds must reach the same conclusion. On a motion for directed verdict pursuant to I.R.C.P. 50(a), the moving party admits the truth of the adverse evidence and every inference that may be legitimately drawn from it. Where there is substantial competent evidence tending to establish plaintiff's case, or where reasonable minds may differ as to the conclusion to be reached from the evidence, the cause should be submitted to a jury." (Citations omitted.)

After reviewing the record in this case, we find that the evidence is such that reasonable minds could differ as to the conclusion supported by the evidence. There is substantial and competent evidence which, when taken as true, and when drawing every legitimate inference in favor of San Tan, tends to establish its case at least to some, if not all of the fields. Consequently, we hold that the district court erred in directing a verdict against San Tan Ranches.

■ Although it is not necessary to discuss all of the evidence presented in this case, a short review of some of the major items supporting San Tan's claims of negligence and damages will be beneficial. Testimony and exhibits admitted at trial on behalf of San Tan indicate that the weed infestation in at least some of the fields occurred in noticeable strips, alternating with strips which were relatively weed free; that the weeds were of types controllable with the proper application of Sencor; that the proper field preparation, irrigation and timing necessary for effective Sencor appli-

cation were effected on San Tan's part; that the best control of weeds required application of one pound of Sencor compound per acre; that as of June 15, 1976, the 2,480 pounds of Sencor had been used up, while bills and records received by San Tan from the respondents indicated that 2,315 acres had been sprayed as of that date; that experts held the opinion that the stripping was caused by aerial misapplication; and that even if an inadequate amount of Sencor had been applied due to error on San Tan's part, weed infestation would have been uniform rather than stripped.[1]

During cross examination, counsel for the respondent through questioning and the submission of exhibits cast doubt upon much of the evidence set forth above. However, when the evidence is viewed most favorably in behalf of San Tan, as required under I.R.C.P. 50(a), it must be concluded that San Tan had presented enough evidence to take the question of negligence to the jury. Although there is no direct evidence of negligence on the part of respondents, it is clear under our law that "circumstantial evidence is competent to establish negligence and proximate cause." *Splinter v. City of Nampa*, 74 Idaho 1, 10, 256 P.2d 215, 220 (1953); *see also Ryals v. Broadbent Development Co.*, 98 Idaho 392, 395, 565 P.2d 982, 985 (1977); *Dent v. Hardware Mutual Casualty Co.*, 86 Idaho 427, 434, 388 P.2d 89, 93 (1963).

Respondents also argue that San Tan failed in its proof of proximate cause and that *Chisholm v. J. R. Simplot Co.*, 94 Idaho 628, 495 P.2d 1113 (1972), is factually so close to this case that it requires an affirmance of the directed verdict. We disagree. *Chisholm* similarly concerned a claim arising from potato crop damage due to weed infestation. The action in that case involved a breach of warranty claim against the producer of the herbicide Lorox. The jury was unable to reach a decision following thirteen hours of deliberation. The court directed a verdict in favor of the defendant pursuant to I.R.C.P. 50(b). "The record [in *Chisholm* indicated] that there was a plethora of possible causes of the appellants' crop loss, for all but one of which the respondents were clearly not responsible." *Id.* at 632, 495 P.2d at 1117. Some of the alternative causes of damage in *Chisholm* were frost, disease, inadequate watering and rotation of crops, and weeds not controllable by Lorox.

In affirming the decision of the trial court on the basis of that record, we stated the following:

"Where the record shows that there are several possible causes of an injury, for one or more of which the defendant was not responsible, and it is *just as reasonable and probable* that the injury was the result of the latter, the plaintiff may not recover since he has failed to prove that the defendant's breach caused the injury. The rule is stated as follows in 65A C.J.S. [Negligence § 264 at 928 (1966).]:

" 'Where the evidence is such that a jury can do no more than guess or conjecture as to which of several acts, conditions, or agencies, not all of which can be charged to defendant, was in fact the efficient cause, it is for the court to decide as a matter of law that plaintiff's case has not been established.' " *Id.* (Emphasis added.)

The same rule applies to negligence actions as well. *See Dent v. Hardware Mutual Casualty Co., supra; Splinter v. City of Nampa, supra.* However, it is also the rule

---

1. Sencor is a compound of 50% active ingredient and 50% base. San Tan apparently ordered the application of one-half to three-quarters pound of Sencor per acre. However, there was considerable dispute at trial as to whether the order had reference to the amount of active ingredient, *i. e.*, "active Sencor," or to the amount of Sencor compound to be applied. Expert testimony indicated that application of one-half to three-quarters pound of Sencor compound (*i. e.*, ¼ to ⅜ pound of "active Sencor") was inadequate to control many varieties of weeds. Nevertheless, notwithstanding the question of how much Sencor had actually been applied, the testimony of Dr. Ohms that weeds would not have appeared in strips even if an inadequate amount of Sencor had been applied was sufficient to take the issue of negligence to the jury. In addition, it is clear that evidence on this point must be viewed in a light most favorable to San Tan for the purposes of I.R.C.P. 50(a).

that "the possibility, or even probability of another cause for damages than that alleged does not defeat recovery where plaintiff presents sufficient facts to justify a reasonable juror in concluding that the thing charged was the prime and moving cause." *Stillwell v. Aberdeen-Springfield Canal Co.*, 61 Idaho 357, 360, 102 P.2d 296, 298 (1940); *see Sumey v. Craig Mountain Lumber Co.*, 31 Idaho 234, 242, 170 P. 112, 114 (1918), *cert. denied* 246 U.S. 667, 38 S.Ct. 336, 62 L.Ed.2d 929 (1918); *Adams v. Bunker Hill & Sullivan Mining Co.*, 12 Idaho 637, 643, 89 P. 624, 626 (1906) (on rehearing).[2]

■ In *Chisholm*, this Court concluded, based upon the record in that case when construed most favorably to the plaintiff, that a reasonable juror could not have concluded that a breach of warranty was a more likely cause of the crop damages than one of the other possible causes. The record in the case at bar does not support a similar conclusion. The evidence that some of the weed infestation occurred in strips is in itself distinctive and supportive of plaintiff's claim that the prime and moving cause of the weed infestation was the respondent's negligence. It is disputed whether other possible causes of weed infestation would yield such a pattern. However, since all conflicts in the evidence at this point must be viewed in a light most favorable to the plaintiff, it must be concluded that a reasonable juror could determine that it is the greater probability that respondent's negligence was the prime and moving cause of the weed infestation. Consequently, the question of proximate cause should have been given to the jury.

The court below also ruled that proof of damages was insufficient to permit recovery by San Tan. Damages were claimed by San Tan for the extra costs incurred in harvesting the weed infested fields and for loss of yield due to the infestation. Jeffrey Martin, farm manager for San Tan, testified as to the extra costs of harvest necessitated by the weed infestation, and the elements which were the source of those extra costs, e. g., additional personnel and increased transportation requirements. Respondents contend that such testimony alone without documentation is speculative and uncertain.

■ Although Martin could not point to business records which set out these additional costs as separate entries, his farm experience and responsibilities qualified him to testify concerning the increased costs. The fact that evidence of business expenses is presented only by oral testimony rather than documentation does not *ipso facto* render the evidence speculative or uncertain. *McLean v. City of Spirit Lake*, 91 Idaho 779, 784, 430 P.2d 670, 675 (1967). We find sufficient evidence in the record to require a decision by the jury on the claim of increased costs to San Tan due to weed infestation.

■ As for the damages due to reduction in yield, it appears that the evidence is insufficient in one respect.

2. In *Adams v. Bunker Hill & Sullivan Mining Co.*, 12 Idaho at 650, 89 P. at 628, the following was stated:

"It must be readily admitted that where the evidence in a case of this kind is so uncertain as to leave it equally clear and probable that the injury resulted from any one of 'half a dozen causes,' then a verdict for plaintiff would be pure speculation, and would not be sustained, but it may be true that the evidence would leave it *possible* that the injury resulted from any one of several causes, and yet it would at once point to the *greater probability* that it resulted from the one certain, specific cause charged by the plaintiff. In the latter case, the jury would be justified in returning a verdict in favor of the plaintiff, although it be possible that the injury may have resulted from some other cause. There are very few things in human affairs, especially in litigation involving damages, that can be established to such an absolute certainty as to exclude the *possibility* or even some *probability* that another cause or reason may have been the true cause or reason for the damage rather than the one urged by plaintiff. But such *possibility*, or even *probability*, is not to be allowed to defeat the right of recovery where the plaintiff has presented to the jury sufficient facts and circumstances surrounding the occurrence as to justify a reasonable juror in concluding that the thing charged was the prime and moving cause." (Emphasis in original.)

"[T]he measure of damages for injury to a growing crop is the difference between the value of the crop actually raised upon the land and the crop which would have been raised upon it under normal conditions for the year in question, less the cost of maturing, harvesting and marketing such additional portion of the crop,— the difference in value between the probable yield and the actual yield, less the probable cost of placing the additional crop in a marketable condition and marketing it." *Casey v. Nampa & Meridian Irr. Dist.*, 85 Idaho 299, 304, 379 P.2d 409, 411 (1967); *Kingsbury v. Bacon*, 38 Idaho 701, 224 P. 438 (1924).

Although San Tan presented competent evidence to show the amount of its lost yield and harvesting costs, we find no evidence of whether there were marketing costs, and if so, the amount thereof. However, since there was sufficient evidence of liability and damages to require that this case be given to the jury, we reverse and remand this action for a new trial. Additional evidence establishing damages for lost yield due to the weed infestation may be submitted at the new trial.

In addition, although plaintiffs submitted evidence sufficient to justify a jury award of damages for increased harvesting costs, those damages would be included in a lost yield calculation, using as harvesting costs for the probable yield the normal cost of harvesting absent weed infestation. Consequently, on remand, should all of the elements of lost yield be established, separate damages for increased costs should not be awarded, since they would be included in the lost yield calculation.

The judgment is reversed and remanded. Costs to appellants.

McFADDEN, BISTLINE, DONALDSON and SHEPARD, JJ., concur.