654 P.2d 368

Herbert W. DUSTIN,
Plaintiff-Respondent,

v.

Leonard BECKSTRAND and Mary
Burdette Beckstrand, husband and
wife, Defendants-Appellants,

and

Big Wood Canal Company, Defendant.

No. 13824.

Supreme Court of Idaho.

Aug. 27, 1982.

Rehearing Denied Dec. 9, 1982.

Dalon Esplin, Lowell N. Hawkes, Chartered, Pocatello, for defendants-appellants.

Jon J. Shindurling, May, May, Sudweeks, Shindurling & Stubbs, Twin Falls, for plaintiff-respondent.

SHEPARD, Justice.

This is an appeal from an order denying a motion to vacate a judgment. We affirm in part, reverse in part and remand.

The genesis of this action arose in 1977 when defendants sold to plaintiff a farm and personal property at a price of $150,000. As a part of that sale, defendants were required to turn over to plaintiff a number of shares in the Big Wood Canal Company representing water appurtenant to the land. A quarrel broke out almost immediately between the parties, resulting from defendants' refusal to turn over certain of the personal property and defendants' attempts to sell the same property to other persons. Plaintiff brought an action against defendants and recovered a judgment of some $4,000. In 1977, plaintiff Dustin entered negotiations with third parties for the sale of the real property. Defendants made efforts to prevent that sale and entered into a pattern of behavior intended to delay and prevent the consummation of that sale, which conduct included a refusal to transfer the shares of the Big Wood Canal Company water stock. Defendants had obtained possession of the shares of water stock, refused to convey them to the plaintiff and denied having possession of the stock. During the spring and summer of 1978, plaintiff, the prospective purchasers, and plaintiff's attorneys, on numerous occasions sought to gain transfer of the stock from defendants to plaintiffs; however, defendants refused to convey the stock, denying they had possession of it. Denial of conveyance of the stock delayed the consummation of the sale from plaintiff to third parties.

The instant action was filed November 15, 1978, wherein plaintiff sought the performance of defendants in conveying the water stock to the plaintiff and for damages. Service of process was made on defendants and a handwritten, *pro se* answer was filed by defendants in which they essentially denied failure and refusal to turn over the water stock, denied having possession of the water stock, and conditionally stipulated that the court could order the transfer of the water stock, but only if plaintiff's claim for damages was dismissed. Therein the defendants stated: "Our present address is Box 111, Missionary Training Center, Provo, Utah 84601."

Thereafter on January 5, counsel for plaintiff filed a note of issue and request for trial setting. Included therein was an indication of the estimated time of trial, the nature of the action, and that a jury was not requested. Contained on this document was a certification that a copy had been mailed to defendants at P.O. Box 111, Provo, Utah; however, the designation "Missionary Training Center" was not contained thereon. At the same time, counsel for plaintiff filed a motion for partial summary judgment together with a notice of hearing on that motion. Those documents all were received by defendants and in response thereto, defendants filed two handwritten, *pro se* documents in which the defendants essentially reiterated their willingness to accede to the transfer of the water stock on the condition that the remaining claim for damages be dismissed. In the event the claim for damages was not dismissed, defendants indicated they intended to counterclaim, but no counterclaim was stated. It was stated therein:

"Before any trial dates are set, or before any hearings are set or heard, or any judgments given, *other than the two choices given above,* the Judge is disqualified from having anything more to do with this case, either of hearing any more arguments or giving any more rulings or judgments. * * * This is the final and last offer of the Defendants, for the Plaintiffs to accept this water stock and forevermore hold their peace, or forget that they should ever have it ... P.S. We have no idea what our address from this day on for a period of undetermined length.

* * * It is further stated that the defendants, Leonard Beckstrand and Burdette Beckstrand has sought counsel to

represent them in this case, but have been unable to secure that counsel. If it is necessary for counsel to represent them; that counsel will not be available for a period of two years." (Emphasis added.)

The defendants stated that neither they nor their counsel could be present at the hearing on the motion for summary judgment, "nor can they be for a period of two years."

Approximately two days later, the defendants Beckstrand left the United States having no knowledge as to where they would be or at what address, other than in the country of Peru. On February 5, 1979, the trial court entered its order setting a trial date for the 14th of August, 1979, a copy of which order was sent to Leonard Beckstrand, Box 111, Provo, Utah, 84601. That mailing was returned to the court marked, "returned to sender, undeliverable as addressed, unable to forward."

The record does not reflect and indeed defendants do not contend that following their departure from the United States they ever furnished or attempted to furnish the clerk of the court, the trial judge, the plaintiff, plaintiff's counsel, or any other person associated with the litigation, an address at which they could be contacted or receive mail. During their absence from the United States, the Beckstrands were in at least two locations in Peru and one in Bolivia. Nevertheless, defendants admit that during the time they were in Peru, they received two communications from counsel for plaintiff, one of which notified them of a hearing on motion for summary judgment, and the other indicating plaintiff's waiver of a jury trial. Following receipt of those notices, defendants continued to do nothing.

In the meantime, plaintiff's motion for partial summary judgment was heard on the 22nd day of January, with defendants failing to appear either in person or by counsel, and said motion was granted. Notice thereof was mailed to defendants at an address in Arequipa, Peru, but was returned to the district court for lack of sufficient postage.

Thereafter, the matter came on for trial on the 14th day of August, 1979, before the trial court sitting without a jury. Defendants failed to appear either in person or through counsel. Following trial, findings of fact, conclusions of law and judgment were entered in favor of plaintiff and against defendants insofar as these parties are concerned, ordering defendants to convey the water stock to the plaintiff and awarding plaintiff $5,000 in general damages and $5,000 in punitive damages together with costs and attorney's fees. The record does not disclose whether or not notice of the entry of that judgment was sent to defendants at any address, but defendants received actual notice of that judgment as of November 13, 1979.

Thereafter, the Beckstrands returned to the United States and on February 11, 1980, counsel for Beckstrands filed an attempted appeal from the judgment and at the same time filed a motion to set aside judgment. The attempted appeal from the judgment was dismissed by this Court as untimely. Defendants' motion to set aside judgment came on for hearing on May 28, 1980, at which no evidence was presented, but argument from counsel for both plaintiff and defendants was heard. Thereafter, the trial court entered its memorandum decision denying said motion to set aside the judgment.

It must be recalled that the sole issue on appeal from a denial of appellants' Rule 60(b) motion to set aside the judgment against them is whether the trial court abused its discretion in denying the motion. *Johnston v. Pascoe,* 100 Idaho 414, 599 P.2d 985 (1979); *Pullin v. City of Kimberly,* 100 Idaho 34, 592 P.2d 849 (1979); *Lisher v. Krasselt,* 96 Idaho 854, 538 P.2d 783 (1975); *Willis v. Willis,* 93 Idaho 261, 460 P.2d 396 (1969). Accordingly, its decision will not be set aside absent a clear showing of abuse of discretion. A Rule 60(b) motion is not a substitute for a timely appeal.

Appellants first assert that the judgment should be set aside because they never received the notice of the court's order setting the trial date. That notice was sent to

Box 111, Provo, Utah, and returned as undeliverable. The Beckstrands argue that this was an incorrect address and that the court therefore failed to serve that notice at their "last known address" as required by Rule 5(b). First, it is not clear that this address, without the words "Missionary Training Center," was so deficient that it could not be their "last known address." The record reflects that the Beckstrands received the request for trial setting filed and served by plaintiff. The attached affidavit for mailing states that it was sent to P.O. Box 111, Provo, Utah. It would not be a clear abuse of discretion for the trial court to conclude that Box 111 was an adequate address at which the appellants could have been reached prior to their departure for South America.

■ Assuming, however, that the address was not the Beckstrands' "last known address," such does not require a reversal on the grounds of improper service under the facts of this case. Rule 5(b) states, in pertinent part:

"Service upon the attorney or upon a party shall be made by delivering a copy to him or by mailing it to him at his last known address or, if no address is known, by leaving it with the clerk of the court."

Appellant's interpretation of this sentence would have us ignore the last clause. As the Beckstrands were leaving this country they informed the court in writing that they did not know what their address would be from that day forward for an indeterminate period of time. Rule 5(b) permits service on the clerk of court when "no address is known." The request for a trial date was filed with the clerk after it was returned from Utah. When parties disavow their mailing address and choose to do without the services of an attorney who might be counted upon to be contacted by the court, see *Vanbeever v. DeWolf,* 528 F.2d 932 (3d Cir.1976), they shoulder the responsibility of maintaining contact with the court to keep themselves apprised of the status of their case. Parties cannot be permitted to insulate themselves from ongoing court proceedings by telling the court "you can't find

me." After the Beckstrands reached Peru, they had three separate addresses, yet never once informed the court what any of them was.

■ The appellants also assert that the judgment is void because due process was violated through the court's failure to give them notice. Again we disagree. Due process requires "reasonable notice." *Prather v. Loyd,* 86 Idaho 45, 50, 382 P.2d 910, 912 (1963). First, this case does not involve service of process. Here the Beckstrands had been validly served and were aware of the proceedings against them. Hence, appellants' reliance on *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1949), a case involving service of process, is misplaced. *Mullane* does state that the right to be heard is founded upon the right to be "informed that the matter is *pending.*" *Id.* at 314, 70 S.Ct. at 657 (emphasis added). Here there is no doubt that the Beckstrands were aware that the suit was *pending.*

The only question is whether it was reasonable to send notice of trial setting to an address at which the appellants had apparently received mail and then file the notice with the court. In light of the Beckstrands' disavowal of their address, we hold that notice as provided in the instant case was reasonable.

■ Appellants also argue that the judgment was void because it was taken before a disqualified judge. I.R.C.P. 40(d)(1) permits parties to disqualify one judge without cause, simply by filing a motion citing this automatic disqualification rule. We hold that appellants' attempted disqualification of the trial judge was ineffective. First, their *pro se* letter was not in motion form nor did it cite Rule 40(d)(1). Even assuming proper form, it was nevertheless ineffective. The Beckstrands told the court that it was permitted to either order the transfer of the stock in exchange for dismissal, or order that the defendants keep the stock, but if the court failed to comply with their demands, the judge so ruling was disqualified. Such a conditional disqualifi-

cation finds no precedential approval nor can it be sanctioned by public policy. To permit a party to disqualify a judge after that party finds how the judge will rule on a matter before him would permit forum shopping of the worst kind.

■ The attempted disqualification was also made without knowledge of which judge would be assigned to the case. Rule 40(d)(1) serves a salutary purpose in achieving a fair tribunal. However, a party cannot know whether there are reasons, which would engender doubts in his or in his counsel's mind about the tribunal's fairness until the party learns who is to be the judge. Absent any such reasons, disqualification serves only to delay the proceedings. This case offers a prime example of such attempted delays. The Beckstrands' *pro se* demands clearly reveal their intent to delay this action for as long as possible and to prevent it from coming to trial. I.R.C.P. 1(a) states that the rules of civil procedure are to be construed "to secure the just, speedy and inexpensive determination of every action and proceeding." To construe Rule 40(d)(1) to allow disqualification solely for delay would be contrary to the spirit of the rules. Hence, we hold that to disqualify a judge under Rule 40(d)(1), the judge who is to be disqualified must be named.

Appellants next argue that the court improperly awarded Dustin a judgment in the absence of a jury. In part we agree. Dustin demanded a jury trial in his original complaint. However, in his request for trial setting it was stated that a jury was no longer requested. In their *pro se* response the Beckstrands then demanded a jury. The trial was held without a jury after the Beckstrands failed to appear.

The procedural rules in some states expressly provide that failure to appear at trial constitutes waiver of the right to a jury trial. *See Whitehead v. Bi-Petro Marketing, Inc.,* 356 So.2d 150 (Ala.1978); *Doran v. Burke,* 118 Cal.App.2d 806, 258 P.2d 1078 (1953); *Wakefield v. State ex rel. Hall,* 420 P.2d 490 (Okl.1966). I.R.C.P. 38(d) contains no such provision. It states:

"Rule 38(d). Waiver.—The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by him of trial by jury. A waiver of trial by jury is not revoked by an amendment of a pleading asserting only a claim or defense arising out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties."

Similarly, Rule 39(a) sets forth the method of consenting to withdrawal of a previous demand for a jury. It states:

"When trial by jury has been demanded as provided in Rule 38, the actions shall be designated upon the register of actions as a jury action. The trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury or (2) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist."

■ Other courts, without waiver-by-failure-to-appear provisions in their rules, have held that when the defendant has demanded a jury, a subsequent failure to appear does not act as a waiver of the jury trial. *North American Provision Co. v. Kinman,* 288 Ill.App. 414, 6 N.E.2d 235 (1937); *Matheny v. Greider,* 115 W.Va. 763, 177 S.E. 769 (1934). In one case, waiver by defendant was found after his demand for a jury but there the defendant had stated just before trial that he "would not defend." *Peters v. Sturmur,* 263 Mich. 494, 248 N.W. 875 (1932). The Beckstrands made no similar statement, either written or oral. Hence, we believe that the Beckstrands, having demanded a jury and not having consented to withdrawal of that demand, have not waived their right to a jury. We are not called upon to decide whether failure to appear in the absence of a demand

would act as a waiver of the right to a jury. *Compare Hill v. Vetter,* 525 P.2d 529 (Alaska 1974) *with Sykes v. Belk,* 278 N.C. 106, 179 S.E.2d 439 (1971).

■ The conclusion that a jury was required at the trial does not compel a reversal of the entire judgment. If the court had impanelled a jury, upon hearing the evidence the court would have been required to direct a verdict for plaintiff, as the defendants were not there to interpose any defenses they might have had or submit conflicting testimony to be sorted out by the jury. *See* I.R.C.P. 50(a); *cf. Shields & Co., Inc. v. Green,* 100 Idaho 879, 606 P.2d 983 (1980); *Lombard v. Cory,* 95 Idaho 868, 522 P.2d 581 (1974). Plaintiff's evidence introduced at trial clearly would support a directed verdict. Hence, the court's failure to call a jury was harmless error on the issue of liability.

■ That does not mean that impanelling a jury would have been a useless act. The amount of damages was not a fixed amount. Determination of both compensatory and punitive damages, in such a case, is within the province of the jury. *Thomas Helicopters, Inc. v. San Tan Ranches,* 102 Idaho 567, 633 P.2d 1145 (1981); *Bentzinger v. McMurtrey,* 100 Idaho 273, 596 P.2d 785 (1979); *Lombard v. Cory,* 95 Idaho 868, 522 P.2d 581 (1974); *Blaine v. Byers,* 91 Idaho 665, 429 P.2d 397 (1967). Hence, this case must be remanded for a new trial on the issue of damages.

■ Attorney's fees were awarded at the original trial. That award may stand. The allowance and amount of attorney's fees is not a jury question. Based upon its finding that the defendants acted maliciously, the trial court could reasonably have believed, under the circumstances of this case, that the Beckstrands were defending frivolously, unreasonably or without foundation, and Dustin was the prevailing party at that action. I.R.C.P. 54(e)(1). We find no abuse of discretion in the award of attorney's fees in the trial court.

■ Finally, appellants argue that they were denied their right to appeal because they did not receive notice of the judgment as required by I.R.C.P. 77(d). The rule specifically states that failure to comply will not relieve a party from the time limits for appeal unless the party had no actual notice. Here the trial court found that the Beckstrands had actual notice of the judgment against them on November 13, 1979, when they received a writ of execution which specifically set forth the case and the amount of damages awarded. We agree that this was sufficient notice to constitute "actual notice." This Court has held that "[a]ctual knowledge of a judgment will cause the time for appeal to begin to run even if formal notice pursuant to I.R.C.P. 77(d) has not been given." *Cline v. Roemer,* 97 Idaho 666, 668, 551 P.2d 621, 623 (1976). Notice of appeal was not filed until February 11, 1980, almost three months after the Beckstrands had actual notice and long after the time limits had run.

The order of the trial court denying appellants' Rule 60(b) motion is affirmed in part, reversed in part, and remanded with instructions to conduct a new trial solely on the issue of damages. No costs or attorney's fees on appeal.

McFADDEN and DONALDSON, JJ., concur.

BISTLINE, Justice, specially concurring.

Not fully persuaded that the trial court committed any error, I attempt a brief explanation of my own views, differing somewhat from those of the other members of the Court.

Had the defendants allowed the matter to go *entirely* by default it would not have been necessary to empanel a jury. The defendants did, however, let the case go by default, but only after filing their own *pro se* pleadings in the case, wherein they did demand a jury. From that time on, as *pro se* practitioners, their mishandling of their own case was such that had a professional attorney so conducted their affairs—tantamount to an abandonment of their defense contentions—he would have laid himself open to a damage claim for negligence.

On the state of the record before the trial court, it is difficult, on a logical approach, to find fault in the trial court's determination to hear the case without putting the county to the expense of bringing in a jury. Being the avid and staunch supporter of the jury system which I admit to be, I am nonetheless constrained to the view that jury trials should be safeguarded as a constitutional right—for those who will attend the jury trial they have demanded.

Having never been enthralled with Idaho's wholesale adoption of the "federal rules" which are now being assailed even in the federal system, in particular and along with other practitioners I share with the bar a deep concern for the extreme proliferation of those rules—and amendments and alterations thereof which constantly stem from this Court. When the Court set itself to the task of rewriting the entire substantive law of the Youth Rehabilitation Act and the Child Protection Act into Juvenile Rules, which predated my arrival on the Court, and then adopted what it had created without proper heed and circumspection for that which is substantive and that which is truly procedural, I registered a blanket vote against the whole concept. Similarly, I have written from time to time that the Court has improperly entered into substantive areas in amending statutory law relative to awarding attorney fees, and in declaring the substantive law as to the manner in which a witness's credibility may be destroyed by its felony impeachment rule. It is only natural, therefore, that I should experience some reservation toward a court rule which modifies the Constitution by purporting to control the manner in which the right to a jury trial may be lost.

Prior to Idaho's federal rules adoption in 1959, and since before statehood, the legislature provided that the right to a jury trial had to be affirmatively waived by consent, or by failure to appear at the trial. I.C. § 10–301. The rule, on the other hand, would deprive a litigant of his right to a jury if his attorney neglected to demand one in writing. Thus the right of the litigant was subverted to the lawyer's decision or inattention—not a wholly desirable result from a litigant's point of view.

The legislature's substantive code provision and the Court's procedural rule stood together until 1975, in which year a supplicating legislature obliged the Court by complacently repealing the statute. The legislature is not subject to excessive criticism, however, because in 1965 the Court had handed down an opinion in which it declared its authority to be paramount to the legislature's, the essence of which opinion held the matter of a jury waiver to be inherently procedural, and thus within the control of the Court instead of the legislature—which had at that time superintended the proposition for almost one hundred years. *R.E.W. Construction Co. v. District Court,* 88 Idaho 426, 400 P.2d 390 (1965). The damage done by that opinion may well be irreparable, but so long as it stands, the Court will make such rules as it fancies, and will in turn interpret the rules it has made—as has been done.

With those thoughts in mind, I point to that provision of I.R.C.P. 39(a) which provides that "[t]he trial of all issues so demanded shall be by jury, unless ... (2) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist." Under that provision I firmly believe, as apparently did the trial court, that this Court would properly conclude that parties demanding a jury trial, are deemed to have abandoned their demand when they do not appear for trial. The result of such failure to appear is the loss of the claimed right; hence, it no longer exists, and the Rule applies.

Accordingly, in my view the judgment of the district court can be and should be affirmed. It is wholly within the power of the Court to so interpret its Rule, and that other activist courts have not done so carries little weight as against what was the undoubted statutory rule in this state since at least 1887, during which time its validity and propriety was never questioned.

Finding no support from other members of a Court which sees little distinction between substantive law and rules of procedure, I join the opinion of Shepard, J.

BAKES, Chief Justice, concurring in part and dissenting in part;

I concur with the majority's conclusion that the court below erred in entering judgment against the appellants without providing a jury trial. I also concur with the majority's holding with respect to the attempted disqualification of the trial judge. However, I must dissent from the majority's conclusion that the order setting the date for trial was properly served on the appellants.

I.R.C.P. 5(b) states that "service upon . . . a party shall be made by delivering a copy to him or by mailing it to him at *his last known address,* or if *no* address is known, by leaving it with the clerk of the court." (Emphasis added.) It is undisputed that the appellants notified the court that their address was Box 111, Missionary Training Center, Provo, Utah 84601. That was clearly the appellants' "last known address." The order setting the date for trial was not sent to that last known address, but was sent to P.O. Box 111, Provo, Utah 84601.

The majority first justifies its position by stating that "it is not clear that this address, without the words 'Missionary Training Center,' was so deficient that it could not be their 'last known address.'" Implicit in that statement, however, is the fact that it is also *not clear* that the address without the words "Missionary Training Center" was *sufficient* to state the "last known address" of the appellants. Certainly, it is very possible that Box 111 referred to a box at the Missionary Training Center rather than a Post Office Box 111 at the post office. Also, the Beckstrands did not give their address as "*P.O.* Box 111," but rather as simply 'Box 111," further increasing the probability that there were two different Box 111's. That such was in fact the case is manifest by the affidavit of Brenda Wilkinson, a mailroom employee of the Missionary Training Center, Provo, Utah. In her affidavit she stated the following:

"If the address contained the words 'Missionary Training Center', or 'MTC', or our

street address of '2005 North 900 East', or even 'Brigham Young University' with the title of elder or sister preceding the person's name, the letter would be delivered to us. *We would not receive letters addressed to a box number in Provo, Utah, unless the address also somehow connected the box number to the Missionary Training Center."* (Emphasis added.)

Statutes setting forth methods of serving notice must be strictly complied with, and no deviation can be excused. *Smith v. D.R.G., Inc.,* 331 N.E.2d 614, 621 (Ill.App. 1975); *In re Harris,* 273 N.C. 20, 159 S.E.2d 539, 543 (1968); *Cowl v. Wentz,* 107 N.W.2d 697 (N.D.1961); *McAnulty v. Snohomish School Dist. No. 201,* 9 Wash.App. 834, 515 P.2d 523, 525 (1973). Recently, in *Omega Alpha House Corp. v. Molander Associates,* 102 Idaho 361, 630 P.2d 153 (1981), we vacated a denial of a Rule 60(b) motion to set aside a default judgment because notice of an attorney withdrawal did not strictly comply with the rule authorizing withdrawal. In *Wasden v. Foell,* 63 Idaho 83, 87–88, 117 P.2d 465, 467 (1941), this Court stated, "Where service of notice by registered mail is expressly authorized by statute, as is the situation here, it has generally been held that service is effected when the notice is *properly addressed,* registered and mailed." (Emphasis added.) The burden is thus on the serving party to clearly establish that proper service has been made. Here, I.R.C.P. 5(b) permits service by mail; however, there is no doubt that the notice was not addressed with the address provided by the Beckstrands. The fact that it is unclear whether P.O. Box 111, Provo, Utah 84601, was the equivalent of Box 111, Missionary Training Center, Provo, Utah 84601, means that the respondent failed to establish that the notice was sent to the Beckstrands' last known address.

The majority notes that the Beckstrands had previously received one communication which had been sent to P.O. Box 111, Provo, Utah 84601. However, the record in fact indicates that the received communication was very likely properly addressed to the Missionary Training Center. As pointed

out by the majority, the particular communication received by the Beckstrands contained a note of issue, request for trial setting, and a motion for partial summary judgment. Apparently, the note of issue and request for trial setting were prepared before the motion for partial summary judgment. An affidavit of mailing states that the note of issue and request for trial setting were mailed on January 5, 1979, to P.O. Box 111, Provo, Utah 84601. Nevertheless, even from copies of the originals, it appears that a different date had been whited out and the 5th of January, 1979, typed in. Furthermore, there is also an affidavit of mailing for the motion for partial summary judgment. That affidavit shows that the motion was also mailed on January 5, 1979, and was addressed to "P.O. Box 111, *Language Training Center,* Provo, Utah." (Emphasis added.) It is clear from the record that the note of issue, request for trial setting and motion for partial summary judgment were all mailed together. Thus, due to the conflict in affidavits, both made by the same person, there is at least a 50% chance that the envelope containing the documents bore the address of the Language Training Center which, according to the affidavit of Brenda Wilkinson, would have been a sufficient designation to permit delivery of the documents. Certainly, considering the apparent changes made to the date of mailing on the affidavit of mailing for the note of issue and request for trial setting, the probability is much more than 50% that those documents and the motion for partial summary judgment were sufficiently addressed to permit delivery to the Beckstrands as shown by the affidavit of mailing for the motion for partial summary judgment. Consequently, it cannot be said with any degree of certainty that the Beckstrands actually received mail addressed simply to P.O. Box 111, Provo, Utah 84601.

However, even if those documents had been addressed simply with P.O. Box 111, Provo, Utah 84601, and the Beckstrands received those documents despite the incorrect address, still such by itself is not sufficient to establish that that address was equivalent to Box 111, Missionary Training Center, Provo, Utah 84601. Mis-addressed letters and packages often find their way to the intended party, despite the incorrect address, simply because of a particular postal worker's familiarity with facts and circumstances which enable him to recognize the mistake and make a correct delivery. Nevertheless, just because such may have happened once does not mean that it will happen again. Unless the serving party shows that an incorrect address was in fact the equivalent of the correct address, *i.e.,* in this case that there was only one Box 111 in Provo, Utah 84601, then service cannot be said to have been established. Respondents made no such showing, and therefore their assertion of proper service must fail.

The majority also concludes that the Beckstrands disavowed their address, thus permitting service on the Clerk of the court, because *no* address was known. The Beckstrands wrote that "[w]e have no idea what our address from this day on for a period of undetermined length." Characterization of that statement as a "disavowal" is unfounded. The Beckstrands neither disavowed the Missionary Training Center address, nor stated that letters would not be forwarded. They simply stated that they did not know their future address and could not say when such address would be known to them. It is common practice for people to relocate without first having a new address. In such situations, the postal authorities are instructed to hold incoming mail at the old address until they are notified of a new address to which mail should be forwarded. The statement by appellants reflects nothing more than the fact that they did not know their future address and were uncertain as to when they would know.

Depositing notice with the clerk of the court is a last resort and effectively is no notice at all. That method of service is reserved for situations where there is *no* last known address. Clearly, the respondents here did possess the "last known address" of the appellants, and proper service required that notice be sent to that last

known address. Such was not done, and therefore the 60(b) motion to set aside the default should have been granted.

BISTLINE, Justice, on denial of petition for rehearing.

A second review of the appeal record convinces me again that there are some instances where for certain the rules of code pleading are superior to rules promulgated by a court which has better business to attend to. It is absurd to say that a jury trial, once demanded, is not waived by failing to appear at the jury trial which has been demanded. The Court having accomplished the demise of the former statute should either ask the legislature to resurrect it, or promulgate a rule which speaks similarly.

On reconsideration of the main issue, that of no notice being sent to the defendants at their last known address, I have weighed the facts and results of this case against what I consider to be a horrendous abuse of court rules in *Sherwood & Roberts v. Riplinger,* Idaho, 650 P.2d 677 (1982), and find absolutely no comparison. In the latter case the defendant Riplinger appeared through counsel, filed pleadings, went through discovery, and the controversy was completely at issue when his counsel withdrew. Never actually ordered by the district court to do anything, he nonetheless contacted the court's clerk and advised that he would represent himself—but hoped to have an attorney if he could obtain one. For his transgression in not telling the court how he would appear (perhaps spiritually, perhaps in the flesh, whatever) he was defaulted and judgment taken against him without notice—as lamented by Justice McFadden in his opinion—all in the holy name of the Court's rules of civil procedure. Yet I find it impossible to believe that any practicing attorney who took part in the meetings of that Rules committee ever envisioned such a manifestly unjust application. Presently I incline to the belief that a majority of the Court should require amicus briefs from the Rules committee whenever the Court's rules are up for application or interpretation.

On the other hand, the Beckstrands did not deign to appear through counsel, plagued the district court with inept pleadings—including a demand for a jury trial—and in essence advised the court in ambiguous language as to where they might physically not be found, and then disappeared. Nevertheless, they did have a last known address. Everyone has to be some place, and when they leave that place it is inescapable that it becomes the last known address—even be it so vague as the Greyhound Bus Depot in Provo, Utah, which, according to the record here would not be much different than the last one of which the district court had any knowledge. With a majority of the Court willing to put the county to the expense of a jury trial, and with Justice Bakes seeing this case in a more enlightened view than that with which Riplinger was blessed, and because two (or more) wrongs do not make a right, I have concluded to join the point of view expressed by Justice Bakes in his opinion and change my vote to allowing an entire new trial on all issues.