674 P.2d 430

Jose A. LUZAR and Jose Martin Elexpuree dba Joe & Martin Trucking, Plaintiffs-Respondents,

v.

WESTERN SURETY COMPANY, a South Dakota corporation, Defendant-Appellant.

No. 14206.

Court of Appeals of Idaho.

Dec. 5, 1983.

Rehearing Denied Jan. 30, 1984.

Petition for Review Granted March 15, 1984.

Thomas B. High, Benoit, Alexander & Sinclair, Twin Falls, for defendant-appellant.

Lloyd J. Webb and Robert C. Paine, Webb, Burton, Carlson, Pedersen & Paine, Twin Falls, for plaintiffs-respondents.

McFADDEN, Judge Pro Tem.

Jose Luzar and Jose Elexpuree were partners under the name of Joe & Martin Trucking (hereinafter referred to as Trucking). Trucking obtained a judgment against Western Surety Company following a jury trial for damages arising out of Western's failure to return funds posted as security, collateral to the issuance of a track buyer's bond. Following the close of Trucking's case in chief, Western moved for a directed verdict which the court denied. Judgment was entered and this appeal followed. We reverse.

Trucking, in order to serve as a track buyer under former I.C. §§ 22–1401 to –1419 (repealed and replaced, 1982 Idaho Sess.Laws, ch. 94, § 1, p. 176), was required to post a $10,000 bond with the Idaho Department of Agriculture. Trucking applied to Western for this bond which was issued in 1975. Western also furnished two other highway fuel tax bonds of $1,000 and $500 to Trucking for use in the states of Oregon

and Washington. Western required Trucking to post collateral security in the amount of the bonds. Trucking met this condition by depositing three bank certificates of deposit with Western as trustee. Western also required Trucking to execute three collateral agreements covering the three certificates.

Among other provisions, each of the agreements provided:

"FIRST: That the Surety shall have the right in its discretion to retain said collateral or the proceeds thereof until the liability of the Surety on account of having executed said bond or any continuance or renewal thereof, or any other or different bond or bonds or undertakings issued for the Depositor, or at his request shall cease and determine.

. . . .

"SEVENTH: In case of the termination of the liability of the Surety, without loss or damage or expense as aforesaid, on said bond or any other bond or bonds or undertakings which the Surety may have issued before or after said bond at the request of or on behalf of the Depositor, and competent evidence is furnished by the Depositor to that effect, the said collateral shall be returned thereupon to the Depositor upon the surrender of this instrument properly endorsed by the Depositor to show the receipt of said collateral."

In its complaint Trucking alleged that the $10,000 bond was cancelled about March 1, 1980, and thereafter Western forwarded a letter to the Department of Agriculture advising the department of cancellation of the bond as of May 15, 1980. These facts were admitted by Western in its answer. Prior to trial, the parties stipulated that on June 6, 1980, the attorney for Trucking sent a letter to Western demanding return of the $11,500 collateral, offering to display to Western that all of Trucking's customers had been paid and that affidavits to that effect from all the customers with whom Trucking had done business in the last two years would be furnished if desired. The demand letter also stated that there were

no claims against Trucking and its bonds, offering to make Trucking's books available for Western's study as to the correctness of this representation. It was further stipulated that the demand letter was rejected and that it was Western's policy to retain collateral for six months following termination of the bond.

The record reflects that Western rejected Trucking's demand on June 17, 1980, and that Trucking instituted this action on July 1, 1980. During trial Trucking took the position that Western was guilty of a conversion of the collateral by failing to return the collateral, following the demand with the tender to show that there were no obligations of Trucking outstanding for which Western was potentially liable. Trucking further contended that continued possession of the certificates by Western was without authority and legal right. Western's position was simply that under the provisions of the collateral agreements, it was entitled to retain the collateral and that it was within its contractual rights to maintain the possession of the certificates.

During presentation of Trucking's case in chief, Western offered and the court admitted into evidence the three collateral agreements. After Trucking rested its case, Western moved for a directed verdict. The court denied the motion and the case was submitted to the jury.

On appeal Western asserts that the trial court erred in denying its motion for directed verdict. In considering this issue, we look to settled law for the appropriate standard of review. Our Supreme Court has stated that:

"A directed verdict should only be granted when the evidence is so clear and undisputed that all reasonable minds must reach the same conclusion. [Citation omitted.] On a motion for a directed verdict pursuant to I.C.R.P. 50(a), the moving party admits the truth of the adverse evidence and every inference that may be legitimately drawn from it. [Citations omitted.] Where there is substantial competent evidence tending to establish plaintiff's case, or where reason-

able minds may differ as to the conclusion to be reached from the evidence, the cause should be submitted to a jury." *Shields & Co., Inc. v. Green,* 100 Idaho 879, 882, 606 P.2d 983, 986 (1980). *See also Gmeiner v. Yacte,* 100 Idaho 1, 592 P.2d 57 (1979); *Smith v. Great Basin Grain Co.,* 98 Idaho 266, 561 P.2d 1299 (1977).

It is self-evident from examination of the first paragraph of the collateral agreements that Western had "the right in its discretion to retain the collateral ... until the liability of [Western] ... shall cease and determine." From this provision there is no doubt that Western was exercising its contractual rights in retaining this collateral at the time this action was instituted. The fact that the bond had previously been cancelled did not terminate its liabilities under the provisions of I.C. § 22–1407. In other words Western would be liable for any unsettled obligations incurred by Trucking during the life of this bond.

Under the seventh paragraph only upon "termination of the liability of [Western] ... and competent evidence is furnished by [Trucking] to that effect" was Western obligated to return the posted collateral. From reading the collateral agreements together with the statutes requiring the bond, we conclude that Western retained the right to demand the type of evidence to be furnished to establish the lack of any liability on its part for Trucking's activities during the period of the bond's life from 1975 until the bond was cancelled in 1980. The offer by Trucking to submit to Western evidence that Trucking's customers had been paid, together with affidavits to that effect from all its customers with whom it had done business for the last two years was insufficient for that purpose. This is so because the affidavits would have covered only the prior two years, of the five years that the track buyer's bond was in existence.

The submission of records during the course of the trial was likewise insufficient to establish a conversion because Trucking's position was that a conversion had occurred at the time of rejection of its demand for return of the collateral and no evidence was presented at trial concerning what evidence was furnished to Western under the seventh paragraph prior to the rejection.

It is the conclusion of the court that under these circumstances the trial court erred in not granting the motion for directed verdict.

Trucking has urged that the case of *Nora v. Safeco Insurance Co.,* 99 Idaho 60, 577 P.2d 347 (1978), requires a different result. It is our opinion that *Nora* is not pertinent to this case for the reason that in *Nora* there was no collateral agreement as was present here.

Judgment reversed and the cause remanded with directions to the trial court to enter judgment on behalf of Western Surety Company. Costs on appeal to Western. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.